OPINION OF THE COURT
E. Leo Milonas, J.
Defendant herein was indicted on April 2, 1976 for three counts of assault in the second degree, reckless endangerment in the first degree and related crimes arising out of an *1011 incident in which he allegedly struck a police officer with a stolen car being driven by him. The defendant had initially been arrested in connection with this matter on February 5, 1976, but when he failed to make a scheduled court appearance on March 30, a bench warrant was issued for his arrest. Sometime after the filing of the indictment, a Supreme Court warrant was also ordered.
In October and November of 1976, the defendant was arrested in Los Angeles, California, on two separate cases. He was subsequently convicted, receiving consecutive sentences to county jail of, respectively, six months and one year, plus periods of unsupervised probation. Following his sentencing, the defendant was notified of the existence of a detainer warrant lodged against him by the State of New York. He was also informed of his right to request a final disposition of the untried indictment upon which the detainer was based, as well as the fact that he should direct his application to the warden of the institution in which he was confined.
Accordingly, on May 3, 1977, the defendant drew up a handwritten "Petition for Habeas Corpus: Speedy and Public Trail” [sic] addressed to the Supreme Court of the State of New York, County of Manhattan. He then submitted it to the Los Angeles County Sheriffs Department at the Wayside Maximum Security, the place of his incarceration, which proceeded to prepare a form entitled "Record of Inmate’s Legal Document.” This paper, along with the defendant’s petition, was mailed by the Los Angeles authorities to the Clerk of the Supreme Court of New York County. However, no copy was ever sent to the New York County District Attorney’s office, so that the defendant’s whereabouts remained unknown to the People until December, 1977 or January, 1978. His presence in this jurisdiction was finally secured when he waived extradition under section 1555.1 of the California Penal Law.
Defendant now moves to dimiss the indictment against him on the ground that he was not brought to trial within the statutory time period of 180 days mandated by the interstate agreement on detainers, which is incorporated into New York law by CPL 580.20. Pursuant to article III of this provision:
"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried *1012 indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer’s jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.
"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of correction or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting offical and court by registered or certified mail, return receipt requested.”
The uniform compact, adopted by nearly every State, as well as the District of Columbia and the Federal government, was designed to promote the expeditious and orderly transfer of an individual from one jurisdiction to another, the principle objective being to eliminate uncertainties produced by the continuing existence of outstanding charges against that person such as would obstruct programs of prisoner treatment and rehabilitation. (CPL 580.20, art I.) In order to effectuate its purpose, the agreement on detainers established a standardized procedure for the speedy disposition of untried indictments, informations or complaints. It is that procedure which is the subject of dispute here.
The defendant contends that the Los Angeles County Sheriff did not fulfill his statutory responsibilities when he failed to properly notify the New York County District Attorney’s office. Under the statute, a prisoner need perform only one function, he argues, and that is to request of the official having custody of him that he be brought to trial on the *1013 pending out-of-State accusations. Then the warden or Sheriff, as the case may be, is required to forward the defendant’s request, along with the necessary certificate and in conformity with the law, to the appropriate prosecuting officer and court. It is the defendant’s position that he has done all that was needed of him but that due to noncompliance on the part of the Sheriff, his right to a speedy trial has been abridged, and therefore, the indictment against him must be dismissed.
The People, on the other hand, assert that since the defendant’s appearance was procured through extradition and not under the compact, he may not avail himself of the benefits of the statute. In any event, even if the agreement on detainers is deemed applicable to the present situation, the defendant did not, in the view of the District Attorney, carry out all the requisite conditions, and, he is therefore, not entitled to any relief. In support of their argument, the People cite Matter of Baker v Schubin (72 Misc 2d 413) which stated that while inaction by the warden may not be held against the defendant, the interstate compact is not self-executing, and a prisoner must promptly comply with all of the statutory provisions. In that case, the defendant did not send any notice to the prosecutor a dereliction which the court apparently believed to be fatal. See, also, Bey v State (36 Md App 529, June 14, 1977) and People v Primmer (59 AD2d 221) which also seems to place the burden of informing the appropriate court or official directly upon the prisoner, although the court’s affirmance of the conviction was based upon the fact that the defendant had pleaded guilty without raising any claim under CPL 580.20 and that this constituted a waiver of his rights under the agreement.
There is a notable scarcity of authority in New York on the various parties’ respective obligations under the compact. However, this issue has been considered in a number of other jurisdictions, and nearly all of them have held that a prisoner’s sole responsibility under the interstate agreement is to advise the warden of his request for disposition of the charges upon which the detainer is lodged. (People v Wilson, 69 Cal App 3d 631; People v Daily, 46 Ill App 3d 195; Beebe v State, 346 A2d 169 [Del]; Rockmore v State, 21 Ariz App 388; Pittman v State, 301 A2d 509 [Del]; see, also, People v Esposito, 37 Misc 2d 386.) Other than providing prison officials with the required notice, which the defendant must undertake to do, the duty of carrying out the statutory provisions belongs *1014 entirely to the authorities involved. As the court declared in People v Esposito (supra) in the performance of his mandated functions, the warden has no discretion and the inmate no power of supervision.
At any rate, it would certainly be unreasonable to expect a defendant to have knowledge of and then fulfill all of the technical requirements of the compact. For one thing, it is highly doubtful whether he would even be able to compile all of the necessary information. For another, the official nature of the certificate referred to in CPL 580.20 (art III) of the agreement puts the prosecutor on notice that the prisoner is proceeding pursuant to the compact. One court, in fact, went so far as to state that wherever an inmate does not defer to the official having custody of him and attempts to communicate directly with the demanding State, the consequence of omission no longer rests upon the authorities but shifts to the defendant. (People v Daily, 46 Ill App 3d 195, supra.)
In the view of the court here, the adverse effects of an oversight such as occurred in the instant matter must be charged against the prosecution rather than the defendant, who is simply in no position to enforce the procedural terms of the interstate agreement. Clearly, the signatory States, by binding themselves to the compact, have pledged themselves to comply with all of its provisions, thereby rendering themselves agents of each other. If they fail to adhere to their part of the bargain, then New York always retains the option of withdrawing. However, to compel defendants to bear responsibility for the inactions of their custodians is, in effect, to render the law completely meaningless, since tha latter would thus be able to thwart at will the rights of their prisoners. Similarly, the fact that the defendant, in the present case, waived extradition in no way impairs his rights under the statute. CPL 580.20 (art III, subd [e]) specifically states that any request for final disposition under the agreement shall be deemed to be a waiver of extradition, and, besides, the manner of defendant’s production was necessitated by the noncompliance of the authorities. Consequently, more than 180 days having elapsed, the motion to dismiss is granted.