COMMONWEALTH *vs.* CHRISTOPHER MARTENS.

Middlesex.   October 7, 1986. — November 26, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Interstate Agreement on Detainers. Practice, Criminal,* Findings by judge.

A defendant was not entitled to dismissal of a criminal charge on the ground
   that the Commonwealth had failed to provide a speedy disposition in
   accordance with art. III (*a*) of the Uniform Agreement on Detainers,
   St. 1965, c. 892, § 1, where it was undisputed that Massachusetts au-
   thorities had never received notice of the defendant's request for final
   disposition from correctional officials in California, where he was serving
   a sentence of imprisonment, and where the defendant's only proof that
   he had complied with the filing and notice requirements of art. III (*b*)
   of the agreement consisted of his own undisputed verified statements
   which the judge could properly find were not credible. [676-679]

Where a defendant moved for dismissal of a criminal charge on the ground
   that the Commonwealth had failed to provide a speedy disposition in
   accordance with art. III (*a*) of the Uniform Agreement on Detainers,
   and this motion was denied by reason of the defendant's failure to sustain
   his burden of proving that he had complied with the filing and notice
   requirements of art. III (*b*) of the agreement, the actual notice to pros-
   ecutorial authorities imparted by the unsuccessful motion was not suffi-
   cient in itself to satisfy the agreement's requirements, so as to entitle
   the defendant to allowance of a subsequent motion to dismiss, where
   there was no showing that such actual notice conveyed the detailed
   correctional information required to be included in a formal notice under
   art. III (*b*). [679-681]

INDICTMENT found and returned in the Superior Court De-
partment on March 3, 1982.

Motions to dismiss were heard by *Samuel M. Flaksman,* J.,
sitting under statutory authority, and the case was heard by
*Peter F. Brady,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Robert A. Stolzberg* for the defendant.

*Margot Botsford,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant challenges the denial of his motions to dismiss an indictment charging him with two counts of armed robbery. He maintains that dismissal is required under the Interstate Agreement on Detainers (agreement), to which the Commonwealth is a party. St. 1965, c. 892, § 1. After the defendant appealed from his convictions on the two counts of the indictment, we granted his application for direct appellate review. Because we conclude that the defendant has failed to demonstrate compliance with the agreement, we affirm.

On March 3, 1982, the defendant was indicted by a grand jury on two counts of armed robbery. A capias warrant was issued by the Superior Court on March 5, 1982. The office of the district attorney subsequently lodged a detainer in Santa Barbara County, California, where the defendant was being held on separate charges.

In September, 1983, the defendant began serving an eleven-year sentence in California after being convicted of five counts of robbery. At that time, the California correctional authorities notified the defendant that a detainer relating to the Massachusetts armed robbery indictment had been lodged, and that he could request disposition of the charge pursuant to the agreement. According to the defendant, the forms required by the agreement were completed and forwarded to the proper custodial authorities in California. The defendant maintains that thereafter he made several inquiries into the status of his request but received no answer from the California authorities. Both parties agree that the appropriate Massachusetts officials never received a copy of the defendant's request.

On July 5, 1984, the defendant filed a pro se motion to dismiss, which is one basis of this appeal. The motion requested that the indictment be dismissed for failure to comply with the agreement, which provides that any untried indictment, information, or complaint not disposed of within 180 days after the defendant's request for trial be dismissed. Art. III (*a*). On July 13, 1984, the motion judge ruled that there had been no formal

demand under the agreement, and denied the defendant's motion.

The defendant was brought back to Massachusetts in April, 1985. He was arraigned on the 1982 indictment as well as on a subsequent indictment returned by a Middlesex County grand jury in March, 1985, charging the defendant with committing a separate armed robbery in 1981. On June 14, 1985, the defendant, now represented by counsel, moved the judge to reconsider his earlier denial of the defendant's pro se motion to dismiss. Counsel for the defendant also moved to dismiss on the ground that the Commonwealth had received actual notice of the defendant's request under the agreement in July, 1984, and had not tried him within the requisite 180 days.

After a hearing on June 17, 1985, the motion judge denied the motions without opinion. The defendant was convicted on June 19, 1985. This appeal is based solely on the defendant's claims pursuant to the agreement.

The defendant submits two arguments for dismissing the armed robbery indictments.[1] First, he maintains that the judge should have allowed his first motion to dismiss since more than 180 days had passed since the defendant had notified the California correctional authorities of his request for a speedy trial. Second, he argues that his second motion to dismiss was improperly denied because the first motion to dismiss served to trigger the 180-day period of the agreement.

1. Article III of the agreement gives a prisoner incarcerated in one State (sending State) the right to request the speedy disposition of any untried charges on the basis of which a detainer has been lodged against the prisoner by another State (receiving State). See *Carchman* v. *Nash,* 473 U.S. 716, 718-719 (1985). If such a request is made, the prisoner is entitled to be tried within 180 days after he causes written notice of his request to be given to the appropriate prosecuting officer and court.

---

[1] The motion sought dismissal of both the 1982 and 1985 indictments. Only the 1982 indictment can be at issue, however, since the first motion to dismiss was filed in July, 1984.

Article III (b) specifies the manner in which the prisoner is to deliver the requisite notice. He is to give or to send the notice in writing to the warden or other correctional official with custody over him. The appropriate custodial officer then has responsibility for forwarding the prisoner's request to the appropriate prosecuting official and court in the receiving State, together with a certificate "stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner." Art. III (a). If the prisoner is not tried on the outstanding charges within 180 days after he has caused the appropriate authorities to be notified of his request for final disposition in accordance with the agreement, the charges are to be dismissed. Art. III (a). Art. V (c).

The Commonwealth correctly concedes that the 180-day period commences when a defendant files his request with the correctional authorities in the sending State, and not when those authorities forwarded the request to the receiving State. Although we have not had occasion to consider the question, we agree with the majority of jurisdictions that have addressed the issue that a prisoner need only transmit the written notice and request for final disposition to the appropriate custodial officials in order to fulfil completely his responsibility under the agreement. See, e.g., *McCallum* v. *State,* 407 So. 2d 865, 869 (Ala. Crim. App. 1981); *Rockmore* v. *State,* 21 Ariz. App. 388, 390 (1974); *Pittman* v. *State,* 301 A.2d 509, 512-513 (Del. 1973); *People* v. *Daily,* 46 Ill. App. 3d 195, 201-203 (1977); *Ward* v. *State,* 435 N.E.2d 578, 581 (Ind. Ct. App. 1982); *Burns* v. *State,* 578 S.W.2d 650, 652 (Tenn. Crim. App. 1978). Cf. *State* v. *Carroll,* 4 Hawaii Ct. App. 573, 576 (1983) (remanded for hearing on whether prisoner filed written notice and request for final disposition with authorities). We also agree with the result reached in the majority of cases that, should the custodial officials of the sending State fail or refuse to forward the request to the receiving State after receiving the prisoner's request, the receiving State, rather than the pris-

oner, is bound by the failure. See, e.g., *Pittman* v. *State, supra; Ward* v. *State, supra; Burns* v. *State, supra*. However, and of particular significance to this case, a prisoner seeking to benefit from the relief provided by the agreement must meet the burden of proving he has complied with the requirements of the agreement. See *Williams* v. *Maryland,* 445 F. Supp. 1216, 1220 (D. Md. 1978); *McCallum* v. *State, supra; State* v. *Carroll, supra; Rhodes* v. *Commonwealth,* 622 S.W.2d 677, 678 (Ky. Ct. App. 1981).

It is undisputed that Massachusetts never received notice of a request by the defendant before the defendant submitted his motion to dismiss in July, 1984. The record shows that the California authorities had complied with the requirements of the agreement in so far as they had notified the defendant of the Massachusetts detainer lodged against him and informed the office of the district attorney that its detainer was on file. The defendant's sole proof that he complied with the requirements of art. III (*b*) consisted of: his verified statement that, on or about October 28, 1983, he sent the notice and request forms required by the agreement to the case records manager at the California facility where he was detained; his verified statement that, thereafter, in February and April of 1984, he sent written requests for information about his October request for a speedy trial; and copies of the forms and written requests he claims to have sent with no indicia of filing, such as date stamps, return receipts, or the like.

Implicit in the judge's decision on the defendant's motion to dismiss is a determination that the verified statements submitted by the defendant were not credible. The judge did not have to accept the allegations in the defendant's affidavits as true, even though nothing in the record directly disputed them. See *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 543 (1971). See also *Rhodes* v. *Commonwealth, supra* (trial judge entitled to disbelieve prisoner's uncorroborated and unsubstantiated statement that he notified prison officials of his request for a speedy trial under the agreement). While the filing of a request with the proper custodial authorities is sufficient to fulfil the prisoner's responsibility under the agreement, the

defendant has the burden of proving that such a proper request was filed. The judge could infer from the fact that no notice had been received in Massachusetts that no notice was ever given, especially where the California authorities had otherwise complied with the detainer statute. Because the judge was not required to find that the defendant complied with the agreement's requirements, we find no error in his denial of the defendant's first motion to dismiss.

2. The defendant's second motion to dismiss claimed that the filing of the first motion in July, 1984, provided the Commonwealth with actual notice of his request for final resolution of the pending detainer under the agreement. The defendant urges that the notice imparted by the first motion to dismiss fulfilled his obligation under the agreement. According to the defendant, since the Commonwealth failed to try him within 180 days of receiving actual notice of his request, dismissal of the 1982 indictment was required.

No Massachusetts case has decided whether actual notice to the prosecution of a defendant's request for disposition ·of a pending detainer by a motion or by a letter triggers the 180-day period under the agreement. Cf. *Commonwealth* v. *L'Italien,* 3 Mass. App. Ct. 763 (1975) (assuming, without deciding, that letter from defendant in Indiana to Massachusetts court clerk requesting resolution of detainer and his notice to the warden met the notice requirement of the agreement). However, a significant number of courts in other jurisdictions have considered the issue and the overwhelming majority have concluded that such notice is not the equivalent of notice to the State of incarceration under the agreement. See, e.g., *State* v. *Culligan,* 454 So. 2d 700 (Fla. Dist. Ct. App. 1984) (motion to dismiss or for speedy trial); *State* v. *Bass,* 320 N.W.2d 824, 827 (Iowa 1982) ("a finding that a motion to dismiss triggers the 180-day time limit of Article III[a] goes beyond liberal construction"); *Ekis* v. *Darr,* 217 Kan. 817, 823-826 (1975) (motion to dismiss or for speedy trial). See also *Williams* v. *Maryland, supra* at 1220 (letters to court and public defender); *McCallum* v. *State, supra* (letters to prosecutor and clerk of

court); *Ward* v. *State, supra* at 580 (letter to prosecutor).[2]
There are compelling reasons that support the majority rule.
The requirements of the agreement, particularly the certificate
of status and offer of custody that the sending State's custodial
officials are required to provide to the receiving State's pros-
ecuting authorities, ensure clear official notice that the prisoner
is proceeding under the agreement. Routing a request for dis-
position through the prisoner's custodian is necessary, because
prosecutors "cannot be expected to analyze each communica-
tion from a prisoner with a fine-tooth comb to determine
whether it should be construed as invoking the [agreement]."
*Nash* v. *Jeffes,* 739 F.2d 878, 884 (3d Cir. 1984), rev'd on
other grounds, *Carchman* v. *Nash,* 473 U.S. 716 (1985).

The facts of this case place it squarely within the class of
decisions holding that, where a prisoner bypasses the formal
requirements of the detainer agreement, he does not automat-
ically acquire the benefit of the agreement's 180-day period.
The agreement is structured to protect a defendant's speedy
trial rights, while giving prosecutors sufficient information to
obtain the defendant's presence and to make other trial arrange-
ments. While the defendant's July, 1984, motion to dismiss
put the district attorney on notice that the defendant had previ-
ously sought to proceed under the agreement, it did not state
that he was still willing to do so — i.e., willing to waive
extradition and return to Massachusetts for trial as required by
art. III (*e*) — if his motion to dismiss were denied. See *Ekis*
v. *Darr, supra* at 823. Thus, most courts have ruled that,
where a prisoner bypasses the statutory procedure, the burden
is on the prisoner to demonstrate strict compliance with the
notification and certification requirements of the agreement.
*McCallum* v. *State, supra* at 869. Here the defendant failed

---

[2] Several of the cited opinions discuss the issue in terms of burden of
proof, concluding that, when a prisoner bypasses the procedure outlined in
the agreement, he must bear the burden of showing strict compliance with
all other procedural requirements prescribed by the agreement. See, e.g.,
*McCallum* v. *State, supra* at 869. No case was found in which the prisoner
satisfied that burden.

to do so, leaving the district attorney without the information in a certificate of status required by art. III (*a*): the amount of time the defendant had served on his sentence; the amount of time remaining to be served; the amount of good time earned; the defendant's parole eligibility; and any parole agency decisions relating to the defendant.

As the defendant failed to comply fully with the requirements of the agreement, he may not now invoke its protections. Accordingly, the defendant's second motion to dismiss was properly denied.

*Judgments affirmed.*