734 P.2d 1275

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Rogelio TARANGO, Defendant-Appellant.**

No. 9464.

Court of Appeals of New Mexico.

Feb. 19, 1987.

Certiorari Denied March 26, 1987.

Jacquelyn Robins, Chief Public Defender,
Deborah A. Moll, Asst. Appellate Defender,
Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant appeals his conviction for escape from an inmate-release program under NMSA 1978, Section 33-2-46 (Repl. Pamp.1983). Following a trial by jury, defendant was sentenced to three years imprisonment. One year was suspended and the sentence was enhanced by one year under the habitual offender statute, for a total of three years imprisonment plus two years of parole.

We affirm.

### BACKGROUND

On June 30, 1983, defendant began serving a sentence of three years for forgery and probation violation. He was incarcerated at the New Mexico Penitentiary and later transferred to the Roswell Correctional Center (RCC). On April 30, 1984, defendant left RCC on a sixty-six-hour furlough, being scheduled to return at 8:30 a.m. on May 3, 1984. Defendant failed to return to RCC. On May 3, the deputy warden swore out a complaint and an affidavit for arrest warrant, and the warden of RCC issued a fugitive writ that same day. All of these events occurred in Chaves County.

The record reflects that defendant was subsequently incarcerated in federal correctional institutions in El Reno, Oklahoma, and Bastrop, Texas. The parties agree that a detainer was sent by New Mexico to federal officials. While imprisoned, defendant sent various documents, pro se, to courts and agencies in New Mexico.

On December 5, 1985, defendant was released from federal prison and transferred to New Mexico. A criminal information was filed February 3, 1986, charging defendant with escape under the inmate-release program. On March 6, 1986, defendant, represented by counsel, filed a motion to dismiss for lack of a speedy trial. After a hearing, the motion was denied. Defendant was tried on June 4, 1986, and convicted by a jury.

Defendant raises two issues on appeal: (1) whether the trial court erred in failing to grant defendant's motion to dismiss for lack of a speedy trial; and (2) whether the trial court erred in failing to submit to the jury defendant's requested instruction on general criminal intent.

The first issue has two parts: whether New Mexico violated the provisions of the Interstate Agreement on Detainers, and whether defendant was denied his constitutional right to a speedy trial. We discuss each issue separately.

### 1. WHETHER NEW MEXICO VIOLATED THE PROVISIONS OF THE INTERSTATE AGREEMENT ON DETAINERS

New Mexico has adopted the Interstate Agreement on Detainers (IAD). NMSA 1978, § 31-5-12 (Repl.Pamp.1984). The speedy trial provisions of the IAD may be activated by either the defendant (under Article 3) or by the prosecutor in the state that issued the detainer (under Article 4). In this case, it is defendant who is alleging the IAD applies because of his actions; therefore Article 3 applies.

Article 3 states in part:

A. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made

of the indictment, information or complaint, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. *The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner,* stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the state parole agency relating to the prisoner.

B. The written notice and request for final disposition referred to in Subarticle A *shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him* who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested. [Emphasis added.]

Defendant alleges he substantially complied with these provisions, thereby triggering the 180–day limit for being tried in New Mexico and, since he was not tried within that period, the charges must be dismissed. The state contends defendant's actions were insufficient to trigger the IAD, at least prior to October 1985, and, even if the notice defendant sent in October 1985 did substantially comply with the IAD requirements, New Mexico was not bound by the 180–day requirement because defendant was released from prison in Texas before 180 days had elapsed.

 When a defendant is discharged by a sending state, the purpose of the IAD loses significance and defendant can no longer rely on its provisions. *State v. Quiroz,* 94 N.M. 517, 612 P.2d 1328 (Ct.App. 1980). The IAD only applies to individuals while they are serving a prison term. *State v. Thompson,* 19 Ohio App.3d 261, 483 N.E.2d 1207 (1984); *see State v. Dun-*

*can,* 95 N.M. 215, 619 P.2d 1259 (Ct.App. 1980). Once the prisoner is released, his rights regarding a speedy trial are the same as those of any other individual. *Thompson; see State v. Smith,* 353 N.W.2d 338 (S.D.1984) (where prisoner's term of imprisonment in another jurisdiction ended within the IAD's speedy trial time period, the IAD was not applicable to him and the trial court did not err in failing to dismiss); *see also* Annot., 98 A.L.R.3d 160, 185–6 (1980). Therefore, even if defendant activated the IAD in October or November 1985, the trial court correctly denied his motion to dismiss, as defendant was released from the federal prison on December 5, 1985.

The question then becomes whether defendant did anything earlier than 180 days before his release, i.e., before June 5, 1985, that would trigger the IAD provisions. The only exhibit in the record dated prior to June 1985 is a "DEMAND FOR SPEEDY TRIAL" dated January 25, 1985. The document is addressed to "UNITED STATES COURT DISTRICT OF NEW MEXICO, SANTA FE, COUNTY." The record includes a return receipt for certified mail, presumably for this document. The receipt, however, does not list the addressee. It is simply checked "Certified," date stamped Albuquerque, N.M., February 8, 1985, and signed on the line for "Agent." The signature is illegible. It seems likely, however, that the document was delivered to the United States District Court in Santa Fe.

The demand for a speedy trial does not mention the IAD, detainer, or New Mexico law. The document was not addressed to the prosecuting officer or to the appropriate court. It does indicate that defendant is a prisoner at the El Reno, Oklahoma, correctional institution, and mentions trial "within the statutory time" citing to a nonexistent statute. Even if it can be inferred that defendant was requesting a speedy trial under the IAD, the document refers to matters pending in the "City/County of New Mexico, Santa Fe District Court."

Defendant alleges the New Mexico authorities were notified that he was requesting to be tried within 180 days. However, even if the request was delivered to the state district court in Santa Fe, which defendant has not established, there is no reference to any case pending in Chaves County.

New Mexico courts have not determined what action on the part of a prisoner is necessary to trigger the provisions of the IAD. Although a few cases from other jurisdictions have required strict compliance with the requirements of the Act, *see, e.g., Whitley v. State*, 392 So.2d 1220 (Ala. Cr.App.1980), the majority of jurisdictions addressing the issue found substantial compliance sufficient. *State v. Roberts*, 427 So.2d 787 (Fla.App.1983). The jurisdictions have not, however, agreed on what constitutes "substantial compliance." *Id.* One court held that the question should turn on whether the defendant has done everything the jurisdiction could reasonably expect, given its own degree of compliance with a scheme that the jurisdiction has the principal responsibility to implement. *McBride v. United States*, 393 A.2d 123 (D.C.App. 1978).

Several states held that the only requirement for a prisoner to activate the IAD is for him to send a request to the prison official who has custody over him. *See, e.g., McCallum v. State*, 407 So.2d 865 (Ala.Cr.App.1981); *Rockmore v. State*, 21 Ariz.App. 388, 519 P.2d 877 (1974); *Pittman v. State*, 301 A.2d 509 (Del.1973); *People v. Daily*, 46 Ill.App.3d 195, 4 Ill. Dec. 756, 360 N.E.2d 1131 (1977). We believe these jurisdictions are correct. *See State v. Alderete*, 95 N.M. 691, 625 P.2d 1208 (Ct.App.1980) (Lopez, J., dissenting). "Other than providing prison officials with the required notice, *which the defendant must undertake to do*, the duty of carrying out the statutory provisions belongs entirely to the authorities involved." *People v. Diaz*, 94 Misc.2d 1010, 1012, 406 N.Y.S.2d 239, 241 (1978) (emphasis added).

Cases holding that the IAD provisions were activated even though there was something less than strict compliance have involved mistakes by state officials that were outside a defendant's control. *See, e.g., Rockmore; Pittman; Daily; State v. Seadin*, 181 Mont. 294, 593 P.2d 451 (1979). Where a prisoner attempts to communicate directly with the requesting state and there has been no mistake by state officials, defendants have generally been held to a high standard of compliance. *See Beebe v. State*, 346 A.2d 169 (Del.1975); *State v. Savage*, 522 S.W.2d 144 (Mo.App.1975).

If a defendant, acting pro se, elects to bypass the custodial official and send a request for a speedy trial directly to the receiving state, most states hold him to the same standard of compliance required of state officials. *See McCallum; Daily; State v. Grizzell*, 584 S.W.2d 678 (Tenn.Cr. App.1979). But if the proper officials had actual notice, at least one state has held that a "technical deficiency" will not prevent defendant from benefitting under the Act. *Wise v. State*, 30 Md.App. 207, 351 A.2d 160 (1976). Many states, however, deem the certificate from the custodial official mandatory and, if it is not sent, generally because the prisoner bypassed the custodian, the IAD is not invoked. *See People v. Jacobs*, 198 Colo. 75, 596 P.2d 1187 (1979) (en banc); *Greathouse v. State*, 156 Ga. App. 491, 274 S.E.2d 835 (1980); *People v. Collins*, 85 Ill.App.3d 1056, 41 Ill.Dec. 373, 407 N.E.2d 871 (1980); *State v. Thomas*, 275 N.W.2d 211 (Iowa 1979); *Hines v. State*, 58 Md.App. 637, 473 A.2d 1335 (1984); *State v. Cox*, 12 Or.App. 215, 505 P.2d 360 (1973).

▮▮▮ After reviewing the various approaches in other jurisdictions, we conclude the following. We agree that a prisoner need only transmit the written notice and request for final disposition to the appropriate custodial officials to complete his or her responsibility under the agreement. *See Commonwealth v. Martens*, 398 Mass. 674, 500 N.E.2d 282, 284 (1986), and cited cases. We agree also that if custodial officials of the sending state fail or refuse to forward the prisoner's request to the re-

ceiving state, the receiving state, not the prisoner, is bound by the failure. *Id.* at 284–5. The prisoner must prove that the proper request was filed. Where a prisoner bypasses the statutory procedure and attempts to communicate directly with the receiving state, we hold that, absent actual notice by the receiving state, he or she has the burden of complying substantially with the requirements of the IAD.

■ Substantial compliance for purposes of the IAD means the prisoner must file the proper documents, including the certificate of status, with the proper prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction, using registered or certified mail, return receipt requested. While we are not requiring absolute, strict compliance, we will not tolerate more than minor technical violations. Courts must analyze violations on a case-by-case basis. The purpose of the statutory requirements is to ensure clear official notice that the prisoner is proceeding under the IAD. *Martens.* Absent such notice, the receiving state cannot make a rational decision regarding the disposition of the case. *Daily.* When a prisoner, acting pro se, fails to comply substantially with the requirements of the IAD, he or she cannot invoke its protections.

We understand that many prisoners lack the sophistication and expertise to achieve substantial compliance with the IAD. That is why a prisoner should utilize the procedures set out in Section 31–5–12, Article 3. The warden, commissioner of corrections or other official having custody of the prisoner has a duty to promptly inform the prisoner of the source and contents of any detainer lodged against him or her. Article 3(C). The prisoner should then file a written request with that official, retaining a copy stamped with the date of receipt.

■ We now apply the substantial compliance standard to the facts in our case and conclude that defendant failed to meet the statutory requirements. There is no indication that defendant notified a custodi-al official at either federal prison where he was incarcerated or that the certificate required by Article 3(A) was ever sent. Further, there is no evidence that any request was ever sent to the appropriate prosecutor or court as required. While copies of two documents, dated November 18, 1985, were sent to the district attorney and district court in Chaves County, there is no evidence that copies of the January 25 speedy trial demand were sent. Thus, not only did defendant fail to comply with procedures, but the prosecuting officer and court had no actual notice of any request by defendant.

■ Under the substantial compliance standard, the document sent by defendant on January 25 is not sufficient. *Cf. Beebe* (letter addressed to "Clerk of Circuit Courthouse" did not comply with requirement that request be sent to the custodial official); *Rhodes v. Commonwealth,* 622 S.W.2d 677 (Ky.App.1981) (no record that pro se request to "Jefferson County, Frankfort, Kentucky," ever received by Jefferson Circuit Court, Louisville, Kentucky). Defendant has the burden of providing a sufficient record to establish claims of violation of the agreement on detainers. *Alderete.* In this case, defendant has not established that he met any of the requirements to trigger the IAD provisions. *See McCallum* (defendant failed to notify proper officials or to send certificate of status; IAD not applicable).

## 2. WHETHER DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL

Defendant argues that he was denied his right to a speedy trial because he was not tried until twenty-five months after the criminal complaint was filed against him. He alleges this is presumptively prejudicial and, therefore, the balancing factors set out in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) must be considered. *State v. Kilpatrick,* 104 N.M. 441, 722 P.2d 692 (Ct.App.1986).

■ Unless the length of the delay is presumptively prejudicial, inquiry into the

**598**

other balancing factors is unnecessary. *State v. Santillanes,* 98 N.M. 448, 649 P.2d 516 (Ct.App.1982). Speedy trial rights apply to the period after a defendant becomes an accused. *Kilpatrick v. State,* 103 N.M. 52, 702 P.2d 997 (1985).

Defendant alleges he became accused of escape when the deputy warden filed the complaint on May 3, 1984. Even if the speedy trial period could be found to run from this date, and were determined to be presumptively prejudicial so that the four factors set out in *Barker* must be considered, the record does not support a finding that defendant was denied his right to a speedy trial. The four-part test requires that the following factors be balanced: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. *Santillanes.*

▮▮▮ Assuming the delay was as long as twenty-five months (from date of arrest in Texas to trial), since defendant was a fugitive and then imprisoned in another state, most, if not all, of the delay was attributable to him. Where defendant causes or contributes to a delay, he cannot complain of the denial of a speedy trial. *State v. Mascarenas,* 84 N.M. 153, 500 P.2d 438 (Ct.App.1972); *see State v. Harvey,* 85 N.M. 214, 510 P.2d 1085 (Ct.App.1973).

The state cannot be held responsible for any delay prior to the point where it was notified of defendant's whereabouts. While this could arguably have been in August 1985, when a detainer action letter was sent to the department of corrections indicating the date of defendant's anticipated release in Texas, any benefit to defendant of being tried immediately instead of after his release is speculative.

Defendant's motion to dismiss for lack of a speedy trial satisfies the third requirement. Defendant argues that he was prejudiced because his sentence in Texas was to run concurrently with any sentence in New Mexico. As evidence to support this contention, defendant refers to his demand

for a speedy trial sent to Santa Fe in January 1985. There is no supporting evidence from the federal courts. The possibility of serving a sentence concurrently is not a right and cannot be construed as actual prejudice. *State v. Powers,* 97 N.M. 32, 636 P.2d 303 (Ct.App.1981). Even if defendant were to serve concurrent sentences, the New Mexico sentence would be for the underlying felony, and not for the escape charges, which is the subject of this appeal. The escape sentence cannot be served concurrently with the original sentence. NMSA 1978, § 31–18–21 (Repl. Pamp.1981).

Finally, the interests to be protected by a speedy trial are not present under the facts of this case.

> The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982); *see also Kilpatrick,* 103 N.M. at 52, 702 P.2d at 997. Since defendant was incarcerated in Texas, and still had time to serve on his sentence in New Mexico, these interests are not involved.

Defendant has not established a violation of his right to a speedy trial.

### 3. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUBMIT TO THE JURY DEFENDANT'S REQUESTED INSTRUCTIONS ON GENERAL CRIMINAL INTENT

Defendant alleges that the trial court's refusal to give the general criminal intent instruction, NMSA 1978, UJI Crim. 1.50 (Cum.Supp.1985), was reversible error. He argues that because the instruction was not given, there was a failure to instruct on an essential element of the crime.

New Mexico case law has distinguished between jury instructions on an essential element of a crime, and those that are merely definitional. *See, e.g., State v. Stephens,* 93 N.M. 458, 601 P.2d 428 (1979); *State v. Gunzelman,* 85 N.M. 295, 512 P.2d 55 (1973); *State v. Padilla,* 90 N.M. 481, 565 P.2d 352 (Ct.App.1977). Failure to instruct on an essential element of an offense is jurisdictional error and requires reversal. *State v. Otto,* 98 N.M. 734, 652 P.2d 756 (Ct.App.1982).

However, failure to give a definitional instruction is not failure to instruct on an essential element, *Padilla,* and such error is not jurisdictional; the issue must be preserved for review by tendering an instruction or by objecting to the failure of the court to give an instruction. *State v. Doe,* 100 N.M. 481, 672 P.2d 654 (1983). In this case, defendant tendered UJI Crim. 1.50 and it was refused by the trial court. Thus, the question of whether the trial court erred in failing to give the instruction is properly before this court.

The Use Note to UJI Crim. 1.50 was amended in 1985 to make the instruction mandatory for all crimes except no intent crimes "or those crimes in which the intent is specified in the statute or instruction." Thus, under the 1985 amendments, UJI Crim. 1.50 is not required for specific intent crimes.

The 1985 amendments to the Criminal Uniform Jury Instructions became effective October 1, 1985. Supreme Court Order of July 2, 1985, NMSA 1978, UJI Crim. (Cum.Supp.1985). Since the criminal information in this case was filed in 1986, the new Use Note for UJI Crim. 1.50 applies.

Defendant cites *State v. Norush,* 97 N.M. 660, 642 P.2d 1119 (Ct.App.1982), for the proposition that the applicable Use Note was the one in effect at the time of the offense. However, in *Norush,* use of an amended Uniform Jury Instruction deprived the defendant of a defense that was available to him at the time he committed the offense. This court held that the effect, under those circumstances, was of an ex post facto law. A change in a definitional instruction does not rise to the level of an ex post facto law. It did not modify a substantial right of defendant vested in him at the time of the offense upon which he had a right to rely. *See State v. Kavanaugh,* 32 N.M. 404, 258 P. 209 (1927).

Under the current Use Note, the instruction is not mandatory if the crime involved is a specific intent crime. The crime with which defendant is charged, escape from work release, is such a crime. Defendant admits this. A specific intent crime involves some intent beyond the intent to commit the act of the crime. *See generally* R. Perkins & R. Boyce, *Criminal Law,* ch. 7, § 3 (3d ed.1982).

Defendant was charged under Section 33–2–46, which states: "Any prisoner whose limits of confinement have been extended, or who has been granted a visitation privilege under the inmate-release program, who *willfully fails to return* to the designated place of confinement within the time prescribed, *with the intent not to return,* is guilty of an escape." (Emphasis added.) The statute thus requires not only that the defendant willfully fail to return, but that he intend not to return. Thus, this is a specific intent crime, or, as the current Use Note for UJI Crim. 1.50 states, it is a crime "in which the intent is specified in the statute or instruction." It is, in fact, specified not only in the statute but also in NMSA 1978, UJI Crim. 22.28 (Repl.Pamp. 1982), which was given in this case. Therefore, UJI Crim. 1.50 was not mandatory.

**CONCLUSION**

Defendant did not fulfill any of the requirements for activating the IAD. Therefore, New Mexico was not bound by the speedy trial provisions of that Act. Defendant's constitutional right to a speedy trial was not violated. UJI Crim. 1.50 was not required and, therefore, the trial court did not err in refusing to give it. Defendant's conviction is affirmed.

IT IS SO ORDERED.

GARCIA and APODACA, JJ., concur.