**Gary Frank NEWCOMB, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2009.**

Court of Appeals of Alaska.

Sept. 8, 1989.

Allan Beiswenger, Robinson, Beiswenger & Ehrhardt, Soldotna, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and SHORTELL, Superior Court Judge.*

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

OPINION

COATS, Judge.

Gary Frank Newcomb was convicted, following a jury trial, of one count of robbery in the first degree, one count of burglary in the first degree, and one count of assault in the third degree. AS 11.41.500(a)(1); AS 11.46.300(a)(1); AS 11.41.220(a)(1). Newcomb appeals, raising several issues. We reverse the conviction.

On February 10, 1983, two men wearing dark clothing and ski masks robbed Peninsula Furs in Sterling, Alaska, at gunpoint. Peninsula Furs was also the residence of Edward Whitaker, the owner. The men pointed a gun at Whitaker's head, tied him up, gagged him, and then stole approximately $1,400 in cash and $300,000 worth of furs.

On February 19, 1983, Joel Nelson contacted the police and provided information implicating Peter Lindsay in the robbery. Nelson advised the police that the furs were located on Lindsay's property. Nelson told the police he had heard Lindsay and Daniel Medwin talking about furs with Newcomb and George Betzner.

The state troopers contacted Lindsay on February 20, 1983. The troopers drove Lindsay to trooper headquarters and interviewed him for approximately forty minutes. Eventually Lindsay admitted his involvement in concealing the stolen furs and consented to a search of his property. The police recovered the stolen furs in that search. Lindsay's statements also implicated Newcomb, Medwin, and Betzner.

In the course of pursuing his defense to a theft by receiving charge, Lindsay's attorney retained a private investigator, Joseph Malatesta.[1] On August 8, 1983, Malatesta conducted an interview of codefendant Betzner. Malatesta recorded the initial portion of the interview and Betzner denied any involvement in the robbery. However, according to Malatesta, after the tape was turned off Betzner admitted his involvement and named Newcomb as the person who had entered the Whitaker residence with him. When Malatesta went back the next day and attempted to get a statement from Betzner on tape using a concealed tape recorder, Betzner refused to discuss the matter other than to say that he had been talking about "scenarios."

A grand jury indicted Newcomb and Betzner on several charges arising out of the robbery. Eventually, pursuant to an agreement with the state, Betzner pled no contest to several charges. On November 4, 1983, as part of the agreement, Betzner gave a statement in the presence of his counsel to the district attorney. In that statement, Betzner admitted committing the Peninsula Furs robbery and named Newcomb as his accomplice.

On October 3, 1983, Newcomb was arrested in California on a warrant based upon the Peninsula Furs robbery. The California police also found that there was an outstanding California warrant for Newcomb based upon an alleged offense in 1981. Newcomb was held in California. He was tried, convicted, and sentenced on the California charges in June 1984. Newcomb was transported back to Alaska on July 19, 1985.

Newcomb's trial for the charges arising out of the Peninsula Furs robbery was set before Judge James K. Singleton. Before Newcomb's trial, however, Betzner indicated that he would refuse to testify against Newcomb. At a pretrial hearing, Judge Singleton, after ruling that Betzner did not have a valid privilege to refuse to testify, ordered Betzner to testify. Betzner, who was accompanied by counsel, refused to be sworn or to answer questions. Judge Singleton ordered Betzner to answer, and, when Betzner persisted in his refusal, held him in contempt.

Betzner did not testify at Newcomb's trial. However, Judge Singleton admitted both of Betzner's statements implicating Newcomb. The jury ultimately convicted Newcomb on all counts.[2]

1. Lindsay was tried and convicted for his role in the offense. However, his conviction for theft by receiving was reversed by this court in *Lindsay v. State*, 698 P.2d 659 (Alaska App.1985).

2. There were actually two trials. The first trial

■ Judge Singleton admitted Betzner's statements under Evidence Rule 804(b)(3) as statements against interest. Rule 804(b)(3) provides:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Newcomb concedes that Betzner was unavailable because of his refusal to testify. However, Newcomb contends that Betzner's statements were not admissible as declarations against interest. Newcomb also argues that the admission of Betzner's statements violated Newcomb's right to confront the witnesses against him.[3]

We start our analysis with *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). In that case, the United States Supreme Court analyzed the conditions under which the prosecution could use the statement of a nontestifying codefendant as evidence, without violating the accused's rights under the confrontation clause of the United States Constitution. In *Lee,* the United States Supreme Court started with the presumption that "[A] codefendant's confession inculpating the accused is inherently unreliable, and that convictions supported by such evidence violate the constitutional right of confrontation." *Id.* at 546, 106 S.Ct. at 2065 (footnote omitted). The court held, however, that this presumption of unreliability could be overcome if the statement exhibited sufficient "indicia of reliability" to rebut the pre-

sumption of unreliability that attaches to a nontestifying codefendant's confession. *Id.* at 543, 106 S.Ct. at 2063.

In making his decision, Judge Singleton recognized this case law, but concluded that Betzner's statements were admissible because they exhibited sufficient indicia of reliability. We conclude that Betzner's statements implicating Newcomb did not have sufficient indicia of reliability to allow their admission into evidence at Newcomb's trial.

Although the United States Supreme Court has stated that the presumption of unreliability that attaches to the confession of a codefendant may be overcome, it seems clear from the court's decisions that the evidence of "indicia of reliability" must be substantial to overcome that presumption. *Lee,* 476 U.S. 530, 106 S.Ct. 2056; *New Mexico v. Earnest,* 477 U.S. 648, 649–50, 106 S.Ct. 2734, 2735, 91 L.Ed.2d 539 (concurring opinion by Justice Rehnquist) (referring to the "weighty presumption of unreliability" attaching to codefendant's statements); *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *See also Lemon v. State,* 514 P.2d 1151 (Alaska 1973).

Under the circumstances surrounding Betzner's statements, we find that those statements do not have sufficient indicia of reliability to overcome the inherent presumption of unreliability. Betzner made inconsistent statements to Joseph Malatesta. On tape, Betzner originally denied any participation in the Peninsula Furs robbery. Then, off the tape, he said that he had committed the robbery with Newcomb. When Malatesta went back the next day to attempt to get Betzner to make a statement on tape, Betzner refused to discuss the matter other than to indicate that the previous day he had been talking hypothetically. The fact that Betzner made inconsistent statements tends to undermine his credibility.

In addition, it is difficult to hold that Betzner's statement to the district attorney

---

ended in a hung jury.

3. U.S. Const. amend. VI; Alaska Const. art. I, § 11.

was a statement against interest. The statement was made as part of a plea bargain, and Betzner had an incentive to implicate Newcomb. The commentary to Evidence Rule 804(b)(3) (citations omitted) states:

> Without deciding the confrontation question, it is fair to say that it is not highly probable that the Constitution will be read to allow one non-testifying defendant's declarations against interest made to the police to be used against another defendant. Once the decision is made to cooperate with the government, statements by one accused are suspect if offered against another who refuses to cooperate.

We conclude that Betzner's statements implicating Newcomb did not have sufficient indicia of reliability to overcome the presumption that these statements were unreliable.[4] We therefore conclude that admission of these statements was error and violated Newcomb's right to confront the witnesses against him under the sixth amendment to the United States Constitution. We accordingly reverse Newcomb's conviction.

█ Although we have reversed Newcomb's conviction, because of the possibility that he might be retried, we address some additional issues that Newcomb raises. Newcomb contends that the charges against him should have been dismissed because the state violated the Interstate Agreement on Detainers. The Interstate Agreement on Detainers gives a prisoner incarcerated in one state (the sending state) the right to request a speedy disposition of any untried charges which are pending against the prisoner in another state (the receiving state) when the receiving state has lodged a detainer against the prisoner based on those charges. If the prisoner requests a speedy disposition, the prisoner is entitled to be tried within 180 days after his notice is delivered to the prosecuting attorney and appropriate court. AS 33.35.-010.

Newcomb testified, in an evidentiary hearing, that on July 31, 1984, while in Folsom Prison in California, he received documents based upon the Peninsula Furs robbery. Newcomb testified that he had signed the demand for trial form on July 31, 1984. Newcomb indicated that he had placed the envelope containing the demand for trial in another envelope which was addressed to the records office in Folsom Prison. Newcomb then gave the papers to Officer Lee, a correctional officer. Newcomb testified that at that time, Folsom Prison was in a "lock down" situation, so that all the prisoners were confined to their cells. According to an affidavit from Bessie P. Patterson, the correctional case records manager at Folsom Prison, she had contacted Officer Lee, who recalled receiving an envelope containing legal mail from Newcomb. According to Patterson, Lee indicated that he had checked the envelope for contraband, but did not read any of the mail in the envelope. He then returned the envelope to Newcomb to seal. Lee later put the envelope in a mailbox for outgoing mail. Lee told Patterson that he did not know how the envelope was addressed. However, according to Patterson's affidavit, the Folsom Prison files do not contain the July 31, 1984, request for trial.

Superior Court Judge Charles K. Cranston decided this issue in a memorandum decision. In making his decision, Judge Cranston emphasized article III(b) of the Interstate Agreement on Detainers, which provides in part: "The written notice and request for final disposition referred to in paragraph (a) of this article shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of the prisoner...." Judge Cranston, placing the burden on Newcomb to show that he had complied with this provision, concluded that Newcomb had not shown that he had complied

---

4. In admitting the statement which Betzner made to the district attorney where Betzner referred to Newcomb or another codefendant, the names were omitted from the statement and the jury was informed that Betzner referred to "blank." However, Betzner's statement to Malatesta identified Newcomb. In context, by identifying Newcomb in his statement to Malatesta, Betzner identified Newcomb as his accomplice in both statements.

with article III(b). Judge Cranston held that Newcomb had not proved that he had sent the request for trial either to the proper place, or to a proper official having custody of him. Judge Cranston concluded that it appeared from the record that although Lee had placed the envelope in outgoing mail, there was no showing as to where the envelope was addressed. Judge Cranston pointed out that Patterson's affidavit supported the inference that the records department at Folsom Prison had not received a copy of Newcomb's demand for trial.

We have reviewed cases in other jurisdictions which interpret the Interstate Agreement on Detainers. The majority of jurisdictions conclude that "[A] prisoner need only transmit the written notice and request for final disposition to the appropriate custodial officials in order to fulfil completely his responsibility under the agreement." *Commonwealth v. Martens*, 398 Mass. 674, 500 N.E.2d 282, 284 (Mass.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1982, 95 L.Ed.2d 821 (1987) (citations omitted). However, "While the filing of a request with the proper custodial authorities is sufficient to fulfil the prisoner's responsibility under the agreement, the defendant has the burden of proving that such a proper request was filed." *Id.* 500 N.E.2d at 285. *See also State v. Tarango*, 105 N.M. 592, 597, 734 P.2d 1275, 1280 (App.), *cert. denied*, 105 N.M. 521, 734 P.2d 761 (1987). Therefore, case authority from other jurisdictions supports Judge Cranston's conclusion that Newcomb did not sustain his burden of proof that he had given proper notice under article III(b) of the Interstate Agreement on Detainers. In addition, this conclusion is supported by sound public policy, since to hold otherwise could encourage either fraudulent proof of notice or ineffective notice. As a practical matter, this holding requires a prisoner to obtain a receipt or have other convincing proof that he has given notice to the proper officials as required under article III(b). However, this requirement is not too onerous, and is supported by case authority from other jurisdictions. *See, e.g., Martens*, 500 N.E.2d at 284; *Tarango*, 734 P.2d

at 1280. We accordingly affirm Judge Cranston's decision refusing to dismiss the charges against Newcomb.

■ Newcomb next contends that Judge Cranston erred in failing to suppress statements made by codefendant Lindsay that incriminated Newcomb, as well as evidence that the troopers obtained from Lindsay's residence. Lindsay was contacted by the Alaska State Troopers on February 20, 1983, and he made statements implicating Newcomb in the robbery. Lindsay also consented to a search that resulted in the recovery of the furs from the robbery. Lindsay was prosecuted for theft by receiving. This court concluded that Lindsay had been illegally arrested and ordered suppression of both Lindsay's statements and the furs and other fruits of the illegal seizure. *Lindsay v. State*, 698 P.2d 659, 660–62 (Alaska App.1985). Newcomb argues that he has standing to assert the violation of Lindsay's rights to suppress evidence that the police obtained as a result of the violation of those rights.

In *Waring v. State*, 670 P.2d 357, 362–63 (Alaska 1983), the Alaska Supreme Court held that: "A defendant has standing to assert the violation of a codefendant's rights if he or she can show (1) that a police officer obtained the evidence as a result of gross or shocking misconduct, or (2) that the officer deliberately violated a codefendant's rights." *Id.* at 363 (footnotes omitted). Although Newcomb alleges that the state troopers were extremely interested in apprehending him, he did not show that the police engaged in shocking or deliberate conduct. *See Giel v. State*, 681 P.2d 1364, 1367 n. 3 (Alaska App.1984); *Wortham v. State*, 666 P.2d 1042 (Alaska 1983). We accordingly conclude that Judge Cranston did not err in refusing to suppress the evidence that the police obtained from Lindsay. The evidence was properly admissible in Newcomb's case.

The next issue that Newcomb raises concerns the failure of the state to preserve evidence in a condition which would have allowed Newcomb to test the evidence. At trial, Newcomb sought to suppress testimony regarding his truck, including its de-

scription and measurements, and testimony concerning whether it appeared that tires on the truck had been recently changed following the robbery. We decline to address this issue at this time. The Alaska Supreme Court has recently decided a case that may have a substantial bearing on the issue that Newcomb raises in this case. *See Thorne v. Department of Public Safety*, 774 P.2d 1326 (Alaska 1989). In the event that the state chooses to try to admit this evidence in a retrial, the trial court should reconsider this issue in light of *Thorne.*

The conviction is REVERSED.

SINGLETON, J., not participating.