No. 14573

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ERNEST SEADIN,

Defendant and Appellant.

Appeal from: District Court of the Third Judicial District,
Honorable Robert J. Boyd, Judge presiding.

Counsel of Record:

For Appellant:

Byron Boggs argued, Anaconda, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Richard Larson argued, Assistant Attorney General, Helena,
Montana
Ted L. Mizner argued, County Attorney, Deer Lodge, Montana

Submitted: March 12, 1979

Decided: APR 1 ⁊ 1979

Filed: APR 1 ⁊ ⁊⁊⁊⁊

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

On September 14, 1978, defendant moved the District Court of the Third Judicial District, Powell County, for an order dismissing the Information filed against him because of the failure of the State of Montana to comply with the provisions of the Interstate Agreement on Detainers. Sections 95-3131 through 95-3132, R.C.M. 1947, now sections 46-31-101 through 46-31-102 MCA. The District Court denied the motion. On October 2, 1978, defendant was found guilty of the offense of escape. He appeals.

On April 15, 1977, defendant escaped from the Montana State Prison while serving concurrent terms of five and seven years imposed in January 1975. He was arrested in Colorado on another charge in August 1977 and subsequently convicted. While at the Denver County jail awaiting disposition of the Colorado charge, defendant was served with a detainer charging him with escape from the Montana State Prison.

He was subsequently transferred to the Colorado State Prison at Canyon City but apparently the prison officials were not notified of the outstanding detainer. Because the detainer was not forwarded to the prison, the prison officials would not aid defendant in processing the detainer. Defendant then sought the aid of another inmate at the Colorado institution. A motion for quick and speedy trial was drafted and, on February 23, 1978, defendant sent copies of the motion to the Clerk of the District Court for Powell County, the Warden of the Montana State Prison, and the County Attorney for Powell County.

Dolores Munden, supervisor of records at the Montana State Prison, subsequently testified that she received a copy of the motion along with a copy of defendant's Colorado commitment on March 2, 1978. Defendant was returned to Montana on Friday, March 25, 1978, and an Information charging him with escape was filed in the District Court on the following Thursday. The matter was scheduled for trial on May 15. The trial was rescheduled for July 17, and then rescheduled again for September 19. No reason for the continuances appears in the record.

On September 6, counsel were notified that the September 19 trial setting had been vacated. Defendant responded by moving to dismiss the Information on the grounds that he had not received a prompt disposition of the charge as required by the Interstate Agreement on Detainers. The motion was denied. Defendant was tried on October 2, 1978, approximately 210 days or seven months after defendant had notified the officials of his desire to be tried on the escape charge.

The issue presented for review is whether the District Court erred in denying defendant's motion to dismiss the Information charging him with escape pursuant to the provisions of the Interstate Agreement on Detainers.

Defendant argues that he should have been tried within the next "term of court" after his notification to the State of Montana. He argues that the State's failure to bring him to trial within three months violates the provisions of the Interstate Agreement on Detainers as adopted in Montana.

The State contends that the Agreement on Detainers does not apply where a prisoner's transfer to the receiving state

is not for the purpose of effecting a prompt disposition of untried charges there and is not to be followed by the prisoner's return to the sending state. The State goes on to argue that defendant's request did not substantially comply with the Agreement's requirements because it did not include a certificate from Colorado authorities stating "the term of [his] commitment, the time served and the time remaining to be served, the amount of good time defendant may have earned, and defendant's parole status." Finally, the State argues that this case involves a speedy trial question and that under the facts of the case, there was no deprivation of defendant's right to a speedy trial.

The United States Supreme Court recently addressed the provisions of the Interstate Agreement on Detainers in United States v. Mauro (1978), 436 U.S. 340, 98 S.Ct. 1834, 56 L Ed 2d 329. Noting that the agreement has been adopted by 46 states, the Court went on to state the following:

> "The Agreement . . . is designed 'to encourage the expeditious and orderly disposition of . . . charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.' Art. I. It prescribes procedures by which a member State may obtain for trial a prisoner incarcerated in another member jurisdiction and by which the prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction. In either case, however, the provisions of the Agreement are triggered only when a 'detainer' is filed with the custodial (sending) State by another State (receiving) having untried charges pending against the prisoner; to obtain temporary custody, the receiving State must also file an appropriate 'request' with the sending State." (Emphasis added.) 436 U.S. at 343-44, 98 S.Ct. at 1838, 56 L Ed 2d at 336.

The provisions of the agreement, therefore, bind the receiving state when the detainer is filed.

Two questions arise at this point. The first is whether defendant's motion for speedy trial substantially complied with the requirements of the Act. We find that it did.

In Rockmore v. State (1974), 21 Ariz.App. 388, 519 P.2d 877, the Arizona Supreme Court addressed a similar issue. The state had argued that the defendant's petition was incomplete because it was not accompanied by a certificate as required by Article III and that the defendant had not had the sending state, California, offer to deliver temporary custody as required by Article V. The court found no merit in these arguments because the officials of the sending state are required to send the certificate and an offer of custody. Relief should not be denied a defendant when officials of the sending state fail to comply with the provisions to which they are bound. Rockmore, 519 P.2d at 879. In so finding, the court cited Article IX of the Agreement which provides that "[t]his agreement shall be liberally construed so as to effectuate its purposes."

In the instant case it appears that defendant did all that he could do to comply with the provisions of the Agreement. The State invoked the provisions of the Agreement by lodging the detainer and by obtaining custody of defendant in accordance with the Agreement's provisions. We find, then, that under the circumstances of the instant case, defendant's substantial compliance with the Agreement's procedure invoked the provisions of the Agreement.

The second question we must address concerns the meaning of the phrase "next term of court" as it appears in Article III of Montana's version of the Agreement.

The Agreement as adopted in most states provides:

"... he shall be brought to trial within one hundred eighty days after he shall have cause to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint ..." (Emphasis added.) Art. III, Interstate Agreement on Detainers.

Montana's version substitutes the phrase "at the next term of court" for the uniform act's phrase "within one hundred eighty days." This substituted phrase has never been construed by this Court.

Defendant argues that section 93-315, R.C.M. 1947, now section 3-5-401 MCA, defines this phrase:

"The district court of each county which is a judicial district by itself has no terms, and must be always open for the transaction of business, except on legal holidays and nonjudicial days. Juries for the trial of causes must be called by the judge as often as the public business requires. In each district where two or more counties are united the judge thereof must fix the term of court in each county in his district, and there must be at least four terms a year in each county. Any order of the judge of such district fixing terms of court shall be filed in the office of the clerk of the district court in each county of his district, and shall remain in effect until further order of the judge; provided, that nothing in this section shall be construed to prevent the calling of a special term of court, with or without a jury, when in the opinion of the presiding judge the same is necessary. The district judge may adjourn a term of district court in one county to a future day certain, and in the meantime hold court in another county." (Emphasis added.)

Defendant contends that since "there must be at least four terms a year" each term must be three months in length. The State argues that the statute defining terms of court does not require terms to be of equal length. Thus, the requirement of four terms could conceivably be satisfied in a district with three terms of one day and one term of 362 days.

A problem would arise in interpreting this phrase as applied to a county which is a judicial district by itself in that, according to the statute, such a district "has <u>no</u> terms."  But in the instant case, counsel for the State admitted during oral argument that the Third Judicial District comprises more than one county and has terms, though the length of the terms is not consistent.  The State also admitted that defendant was not tried within the next term of court after he had submitted his request for disposition.

Article V(c) of the Agreement provides in pertinent part:

> ". . . in the event that an action on the . . . information . . . on the basis of which the detainer has been lodged is not brought to trial within the periods provided by this act, the appropriate court of the jurisdiction where the . . . information . . . has been pending shall enter an order dismissing the same with prejudice and any detainer based thereon shall cease to be of any force or effect."

Therefore, defendant's conviction is reversed.  The District Court is instructed to enter an order dismissing with prejudice the information charging defendant with escape.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

-7-

Mr. Chief Justice Frank I. Haswell, specially concurring:

I concur in the result on the ground that institutional delay chargeable to the state denied defendant his right to a speedy trial.

_____Frank I. Haswell_____
Chief Justice