**STATE of Utah, Plaintiff and Appellee,**

v.

**Terry MARTIN, Defendant and Appellant.**

**No. 870009.**

Supreme Court of Utah.

Oct. 31, 1988.

Debra K. Loy, Joan C. Watt, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Earl F. Dorius, Salt Lake City, for plaintiff and appellee.

HOWE, Associate Chief Justice:

Defendant Terry Martin seeks reversal of his conviction for aggravated robbery. Error is assigned to the trial court in refusing to dismiss the charges against him on the ground that the State failed to bring him to trial within the 180-day time limit set by article III of the Interstate Agreement on Detainers (IAD), Utah Code Ann. § 77-29-5 (1982).

The applicable time limit depends upon whether article III or article IV of the IAD controls. Article III is invoked when a written request for final disposition of untried charges in another party state is sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him. The corrections official is required to forward the request to the prosecuting officer and the appropriate court in the receiving state, who have 180 days after receipt of the request, to bring the prisoner to trial. On the other hand, article IV provides that a prosecuting officer in the receiving state can request temporary custody of a prisoner against whom he has lodged a detainer. The prosecuting officer has 120 days from the arrival of the prisoner into his custody in which to bring him to trial.

The necessity of interpreting the time limits and of resolving an apparent conflict between them makes it expedient to present the facts in chronological order:

January 17, 1986. Defendant is sentenced on federal charges in New Mexico.

February 24, 1986. The Salt Lake Deputy County Attorney (State's attorney) receives a request from defendant's counsel that final disposition be made of any charges pending against defendant in Utah.

March 14, 1986. The State's attorney receives confirmation that defendant had been assigned to the United States Prison in Lompoc, California, and that the State's attorney's warrant for defendant had been forwarded to that institution. The record does not establish when this warrant was received.

April 11, 1986. The State's attorney sends a request to Lompoc for temporary custody in accordance with article IV of the IAD.

May 14, 1986. Acknowledgment of receipt of the request of April 11 is sent to the State's attorney. Defendant is officially notified that a detainer has been lodged against him in Utah. He indicates to his prison case manager that he wants to file an article III request on the detainer. The case manager does not pursue this request, and neither the State's attorney nor the trial court in Utah is given notice of the request as required by article III.

May 19, 1986. The State's attorney is informed that defendant is currently on a federal writ in Sacramento and that Lompoc will continue the IAD process upon his return.

May 29, 1986. Defendant's counsel reasserts defendant's request for a speedy disposition of the Utah charges in a letter to the State's attorney's office.

June 4, 1986. Defendant is returned from Sacramento to Lompoc.

June 18, 1986. The State's attorney sends a letter to Lompoc requesting information on Utah's request for temporary custody.

August 22, 1986. Lompoc officials send a reply to the inquiry of June 18, indicating the availability of defendant on or after June 15, 1986. There is no explanation in the record for the delay in replying to the letter of June 18.

September 5, 1986. The letter of August 22 is received by the State's attorney.

October 24, 1986. Defendant is brought to Utah under temporary custody.

December 16, 1986. Defendant is brought to trial.

■ Defendant first contends that the letter of February 24 to the State's attorney requesting a disposition of detainers was in "substantial compliance" with the requirements of article III of the IAD. Article III(a) of Utah Code Ann. § 77–29–5 provides in pertinent part:

[W]henever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint *on the basis of which a detainer has been lodged against the prisoner,* he shall be brought to trial within 180 days after he shall have *caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction* written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint.

(Emphasis added.) However, the foregoing must be applied in conformity with article

IX of the IAD, which provides that the IAD "shall be liberally construed so as to effectuate its purposes."

The purpose of article III is to "provide[ ] a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer.... If the prisoner does make such a request, the jurisdiction that filed the detainer *must* bring him to trial within 180 days." *United States v. Mauro,* 436 U.S. 340, 351, 98 S.Ct. 1834, 1842, 56 L.Ed.2d 329 (1978) (emphasis added). Furthermore,

> [t]he legislative history of the Agreement, including the comments of the Council of State Governments and the congressional reports and debates preceding the adoption of the Agreement on behalf of the District of Columbia and the Federal Government, emphasizes that a primary purpose of the Agreement is to protect prisoners against whom detainers are outstanding.

*Cuyler v. Adams,* 449 U.S. 433, 448–49, 101 S.Ct. 703, 711–12, 66 L.Ed.2d 641 (1981). This emphasis on the protection of prisoners' rights has given rise to a doctrine of "substantial" rather than "strict" compliance with the provisions of article III. *See State ex rel. Saxton v. Moore,* 598 S.W.2d 586, 590 (Mo.Ct.App.1980) (only a good faith effort, not strict compliance, is required of the prisoner); *State v. Seadin,* 181 Mont. 294, 298, 593 P.2d 451, 453 (1979) (it is sufficient that defendant does all he can to comply with the act); *see also People v. Esposito,* 37 Misc.2d 386, 238 N.Y.S.2d 460 (1960).

■ Defendant's actions prior to May 14 do not constitute substantial compliance for two reasons. First, May 14, 1986, was the first day on which a request for disposition of detainers could be filed. The record does not establish any prior official notification to defendant of the filing of a detainer at his correction facility, and article III(a) clearly states that a detainer must be lodged against the prisoner before he can invoke article III protection. Second, other courts have held, and we agree, that a communication solely to the prosecuting officer is insufficient compliance to meet the requirements of article III(a) to give written notice to both "the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction." *State v. Smith,* 64 Or.App. 588, 669 P.2d 368 (1983); *Gray v. Benson,* 443 F.Supp. 1284, 1286 (D.Kan. 1978); *Williams v. Maryland,* 445 F.Supp. 1216, 1220 (D.Md.1978).

■ Defendant next contends that his indication to his case manager in Lompoc Prison that he wanted to file a request for disposition of detainers is substantial compliance with article III(b). The evidence indicates that on the form notifying him that a detainer had been lodged against him, the case manager had written "wants to file on these." Defendant relies on *Pittman v. State,* 301 A.2d 509, 512–13 (Del. 1973) (all the prisoner need do is ask the prison official to prepare and send the forms), and *People v. Esposito,* 37 Misc.2d 386, 393–94, 238 N.Y.S.2d 460, 467 (1960) (the prisoner has to do but one thing—give notice and request to the warden or other official having custody of him); *accord State v. Carroll,* 4 Haw.App. 573, 576, 670 P.2d 1290, 1292 (1983).

Article III(b) states:

> The *written* notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

(Emphasis added.) The requirement of a written notice to the warden was not dispensed with in either *Pittman* or *Esposito.* In *Pittman,* the prisoner "sent a *handwritten request* to a Maryland prison official ... requesting that detainer forms be filled out so that he could return to Delaware for a speedy trial." *Pittman,* 301 A.2d at 510–11 (emphasis added). In *Esposito,* the prisoner gave uncontradicted testimony that he delivered to the warden a written request to file on the charges against him. *Esposito,* 37 Misc.2d at 389, 238 N.Y.S.2d at 462.

Other cases also support the interpretation of the substantial compliance doctrine

as one that does not dispense with the need for a *written* notice and request by the prisoner. *Rockmore v. State,* 21 Ariz.App. 388, 519 P.2d 877, 879 (1974); *see People v. Masselli,* 17 A.D.2d 367, 234 N.Y.S.2d 929 (1962); *cf. Sweat v. Darr,* 235 Kan. 570, 579, 684 P.2d 347, 352 (1984) (failure to correctly address a request to a prosecuting attorney took inmate out of substantial compliance with IAD).

Defendant failed to give written notice to the warden or other official who had custody of him. Thus, article III protection was never invoked, and the time limits of article IV apply. Defendant was tried within 120 days of his arrival in Utah. His conviction is therefore affirmed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.