COMMONWEALTH *vs.* JASON COPSON.

Essex. May 2, 2005. - July 11, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Interstate Agreement on Detainers. Extradition and Rendition. Constitutional Law,* Speedy trial.

Discussion of the provisions of the Interstate Agreement on Detainers, St. 1965, c. 892, § 1 [610-611], art. III of which gives a prisoner incarcerated in one State the right to request the speedy disposition of any untried charges on the basis of which a detainer has been lodged against the prisoner by another State [611-613].

This court held that a prisoner who seeks to avail himself of art. III of the Interstate Agreement on Detainers, St. 1965, c. 892, § 1 (Agreement) (which requires the Commonwealth to try a prisoner incarcerated in another State on outstanding charges in the Commonwealth within 180 days after the prisoner has notified the appropriate authorities of a request for final disposition of those charges in accordance with the Agreement), must demonstrate at the very least that he or she has provided the Commonwealth with all of the information called for in art. III, including a certificate from the appropriate custodial official verifying the accuracy of certain information; thus, a trial court judge erred in granting a pro se motion, brought by a prisoner incarcerated on a Federal charge in another State, seeking dismissal under art. III of an indictment filed in the Commonwealth, on the ground that the Commonwealth failed to bring the prisoner to trial within 180 days of having received his pro se motion for a new trial, where the motion, which lacked much of the important information required by art. III and was not accompanied by a certificate of inmate status, did not trigger the running of the Agreement's 180-day period. [616-626]

INDICTMENT found and returned in the Superior Court Department on July 16, 2003.

A motion to dismiss was heard by *Bonnie H. MacLeod,* J., and a motion for reconsideration was heard by her.

The Supreme Judicial Court granted an application for direct appellate review.

*Gregory I. Massing,* Assistant District Attorney, for the Commonwealth.

*Raymond Buso* for the defendant.

COWIN, J. The Commonwealth appealed from the allowance of the defendant's motion to dismiss an indictment charging him with breaking and entering in the nighttime with intent to commit a felony. The defendant successfully argued before a Superior Court judge that dismissal was required under the Interstate Agreement on Detainers (Agreement), St. 1965, c. 892, § 1, because the Commonwealth failed to bring him to trial within 180 days of having received his pro se motion for a speedy trial. He filed the motion while incarcerated on a Federal charge in another State. We granted the Commonwealth's application for direct appellate review and, after oral argument, issued an order reversing the judge's dismissal of the indictment.

In this opinion, we explain why the defendant's pro se motion for a speedy trial, which served as the basis for the dismissal, was insufficient to initiate the running of the 180-day period, thus forestalling its expiration. We hold that a prisoner who seeks to avail himself of the 180-day period of art. III of the Agreement must demonstrate at the very least that he has provided the Commonwealth with all of the information called for in art. III, including a certificate from the appropriate custodial official verifying the accuracy of certain information. Providing the requisite information and certificate is not mere ritual; it is critical to enable the Commonwealth to decide on, and implement, an appropriate course of action with respect to untried charges against a prisoner confined in another State. Because the defendant's pro se motion for a speedy trial in the instant case lacked much of this important information referenced in art. III and was not accompanied by a certificate of inmate status, it failed to comply with the Agreement's requirements. As this case does not require it, we do not consider whether dismissal may be appropriate where a prisoner provides the Commonwealth with all of the information referenced in art. III, including the requisite certificate, but otherwise fails to comply with a technical requirement of the Agreement.

*Interstate Agreement on Detainers.* Because this case requires that we interpret art. III of the Agreement, we begin with a brief discussion of its provisions. The Agreement is a congressionally

sanctioned interstate compact entered into by the Federal government, the District of Columbia, and forty-eight States including Massachusetts (St. 1965, c. 892, § 1). *Alabama* v. *Bozeman*, 533 U.S. 146, 148-149 (2001). *Commonwealth* v. *Wilson*, 399 Mass. 455, 459 (1987). "[T]he Agreement establishes procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial." *Cuyler* v. *Adams*, 449 U.S. 433, 436 n.1 (1981). Its stated purpose is to establish "cooperative procedures" in order to "encourage the expeditious and orderly disposition of such charges and determin[e] . . . the proper status of any and all detainers based on untried indictments, informations or complaints."[1] St. 1965, c. 892, § 1, art. I. See *United States* v. *Mauro*, 436 U.S. 340, 351 (1978). The core provisions of the Agreement are art. III and art. IV. *Id.* These articles establish "two procedures under which the prisoner against whom a detainer has been lodged may be transferred to the temporary custody of the receiving State. One of these procedures [set forth in art. III] may be invoked by the prisoner; the other [, governed by art. IV, is initiated] by the prosecuting attorney of the receiving State." *Cuyler* v. *Adams*, *supra* at 443-444.

Article III "gives a prisoner incarcerated in one State (sending State) the right to request the speedy disposition of any untried charges on the basis of which a detainer has been lodged against the prisoner by another State (receiving State)." *Commonwealth* v. *Martens*, 398 Mass. 674, 676 (1986), cert. denied, 481 U.S. 1041 (1987), citing *Carchman* v. *Nash*, 473 U.S. 716, 718-719 (1985). See St. 1965, c. 892, § 1, art. II (*b*), (*c*). Article III establishes the precise procedures by which the prisoner must make his request and sets forth the manner in

---

[1]Although not defined in the Agreement, a detainer is "a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Alabama* v. *Bozeman*, 533 U.S. 146, 148 (2001). See *Fex* v. *Michigan*, 507 U.S. 43, 44 (1993); *Commonwealth* v. *Wilson*, 399 Mass. 455, 460 n.7 (1987). As in the present case, detainers are often lodged significantly before the prisoner's scheduled release, resulting in the prisoner being sent to the receiving State to face charges while serving his sentence in the sending State.

which the request is to be conveyed to the receiving State.[2] Essentially, in order to initiate the art. III procedures, the prisoner is to give or send the appropriate "notice" and "request" to the warden or other custodial official in the sending State.[3] In turn, the custodial officer is responsible for forwarding the prisoner's written notice and request to the appropriate prosecuting official and court in the receiving State, together with a "certificate" of inmate status that includes certain information set forth in art. III (*a*). See art. III (*a*), (*b*). See also *Commonwealth* v. *Martens,* *supra* at 677. "If the prisoner is not tried on the outstanding charges within 180 days after he has caused the appropriate authorities to be notified of his request for final disposition in accordance with the agreement, the charges are to be dismissed"

---

[2]Article III provides, in pertinent part:

"(*a*) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he *shall have caused to be delivered* to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided, that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner *shall be accompanied by a certificate of the appropriate official* having custody of the prisoner, stating the *term of commitment* under which the prisoner is being held, the *time already served,* the *time remaining* to be served on the sentence, the *amount of good time earned,* the time of *parole eligibility* of the prisoner, and any *decisions of the state parole agency* relating to the prisoner.

"(*b*) The written notice and request for final disposition referred to in paragraph (*a*) hereof shall be given or sent by the prisoner to the warden, commissioner of correction or other official having custody of the prisoner, *who shall promptly forward it together with the certificate* to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." (Emphases added.)

[3]The "notice" and "request" referred to are the prisoner's "written notice of the place of his imprisonment and his request for a final disposition." Art. III (*a*).

with prejudice. *Id.* See Art. V (*c*). To facilitate the implementation of the Agreement, and to create uniformity and consistency in carrying out its provisions, States have developed a set of standardized forms for each step in the procedure.[4] See *Casper v. Ryan*, 822 F.2d 1283, 1285 n.2 (3d Cir. 1987), cert. denied, 484 U.S. 1012 (1988).

*Background.* We summarize facts taken from documents in the record (primarily, correspondence between the defendant and the Commonwealth and their pleadings), transcripts of two hearings on the matter, and undisputed claims by the parties. Because the procedural history is central to our resolution of this case, we set it forth in detail.

According to the Commonwealth, while the defendant, Jason Copson, was on probation on a Federal criminal conviction, he and an accomplice broke into a business establishment in Beverly in an apparent attempt to steal computer equipment. The defendant was then indicted by an Essex County grand jury for breaking and entering in the nighttime with intent to commit a felony in violation of G. L. c. 266, § 16. He fled the jurisdiction. As a result of the breaking and entering indictment, the defendant was found to be in violation of his Federal probation, and a Federal arrest warrant issued. He was ultimately arrested in Virginia on October 28, 2003, on the Federal arrest warrant. In December, 2003, the defendant was sentenced to a period of incarceration for the probation violation, and began serving his Federal term of imprisonment at an Alexandria, Virginia, city jail pending transfer to a Federal prison.

On January 2, 2004, the sheriff of Alexandria notified the defendant that the Commonwealth had lodged a detainer on the Essex County charge. Shortly thereafter, the defendant was moved temporarily to the Northern Neck regional jail in Warsaw, Virginia (Warsaw facility), still pending designation to a Federal prison. The defendant asserts that on January 29, 2004, he handed a pro se motion for a speedy trial to two officials at

---

[4]Among these forms are the "Place of Imprisonment" form, the "Certificate of Inmate Status" form, and the "Offer to Deliver Temporary Custody" form, received by the Commonwealth on July 12, 2004. The defendant's pro se speedy trial motion received by the Commonwealth on February 13, 2004, did not utilize these forms.

the Warsaw facility, and requested that the warden or commissioner of correction forward the motion "with a certificate as required" by the Agreement to the district attorney and clerk of the Superior Court.[5] The Virginia authorities apparently took no action with respect to the defendant's motion. The following day, the defendant was removed from the Warsaw facility and transported to the Federal Medical Center at Butner, North Carolina (FMC Butner).

On February 13, 2004, the defendant, through counsel, filed a copy of his motion for a speedy trial (the same motion he allegedly handed to officials at the Warsaw facility) in the clerk-magistrate's office of the Superior Court in Essex County and served a copy of the motion by hand on the district attorney's office in Salem. The defendant's pro se motion referenced the Agreement and contained the defendant's Federal identification number. It requested a final disposition of the Massachusetts indictment and that "the court issue process to bring him before the court as soon as possible and afford him a speedy trial." Although the defendant had been moved to FMC Butner, the motion stated that the defendant "is currently incarcerated as a Federal prisoner, having been sentenced on December 2003, from the Federal Court and . . . is currently located in the Northern Neck Regional Jail" in Warsaw, Virginia. Neither the defendant nor the Commonwealth took further action with respect to the pending indictment for the next four months.

On June 18, 2004, the Commonwealth filed a second detainer, this time with FMC Butner, notifying the facility of the pending Massachusetts indictment against the defendant, and setting forth the defendant's speedy trial rights.[6] On July 6, 2004, the defendant, still in Federal custody at FMC Butner, executed a "Place of Imprisonment" form, including a request for final disposition of the pending Essex County indictment.

---

[5]The record includes a certificate of service, which the defendant alleges he handed to the Warsaw authorities with his motion. That certificate states that the defendant "served the same . . . to the warden/commissioner of corrections of this facility with the attached Motion for Speedy Trial to forward the same with a certificate as required to . . . [the] District Attorney's Office . . . [and the] Clerk of the Superior Court. . . ."

[6]It is not clear from the record why a second detainer was lodged in this case, but that fact has no relevance to this opinion.

His request, together with a "Certificate of Inmate Status" form and "Offer to Deliver Temporary Custody" form, were mailed to the district attorney and the Superior Court clerk's office. The district attorney and the clerk's office received the documents on July 12, 2004.

The defendant was first scheduled for arraignment before a Massachusetts court (in Essex County) approximately two months later, on September 9, 2004, and the arraignment was continued by joint request until September 15, 2004. At his arraignment, the defendant filed a motion to dismiss for failure to comply with the Agreement's requirement that he be brought to trial within 180 days. The defendant contended that the time requirement of art. III commenced when he handed his pro se motion for a speedy trial to the officers at the Warsaw facility on January 29, 2004, or at least when he caused to be delivered copies of the same to the clerk-magistrate's office and the district attorney in Salem on February 13, 2004. A Superior Court judge held a hearing on the defendant's motion the day of his arraignment. Basing her ruling on the time between the February 13, 2004, receipt of the defendant's motion for speedy trial by the clerk and the district attorney, and September 9, 2004, when the defendant was first brought before the court in Essex County, the judge allowed the defendant's motion to dismiss.[7] The judge concluded that "the defendant did everything that was required of him (to the best of his ability) under the Interstate Agreement on Detainers and that the 'clock' began to run *at least* on [February 13, 2004], if not before. More than 200 days has elapsed. No prejudice need be shown."

On October 6, 2004, the Commonwealth filed an emergency motion to reconsider the judge's allowance of the defendant's motion to dismiss. The Commonwealth argued that the defendant's pro se motion for a speedy trial, received on February 13, 2004, did not comply with the strict requirements of the Agreement and thus did not trigger its 180-day time limit. After

[7]The judge determined that the record was sufficient to decide whether, as a matter of law, the 180-day period under art. III of the Agreement had been triggered on February 13, 2004. However, the Commonwealth argued, and the judge seemed to agree, that any decision based on the alleged January 29, 2004, delivery of the motion to the Virginia custodian would require an evidentiary hearing and should not be considered at that time.

reconsideration, the judge "reaffirmed" the allowance of the motion to dismiss. Relying on our decision in *Commonwealth* v. *Martens*, 398 Mass. 674, 677 (1986), the judge concluded that "the defendant has met his affirmative burden of demonstrating the requisite notice to his then custodian . . . . Having done so, the applicable 180-day period commenced at that time . . . . No further action on his part was necessary (although he did in fact [take] such action and the [Commonwealth] thus had actual notice of the defendant's request)."[8]

The Commonwealth appealed from both the allowance of the defendant's motion to dismiss and the judge's "reaffirm[ance]" of that dismissal. A single justice of the Appeals Court stayed dismissal of the indictment pending appeal. We granted the Commonwealth's application for direct appellate review and, on May 4, 2005, after oral argument, issued an order reversing the Superior Court's dismissal of the indictment. Our opinion sets forth the reasons for that order.

*Discussion.* This appeal raises the question of what information an inmate must provide in order to invoke the 180-day time limitation of art. III of the Agreement. The question is one of law. See, e.g., *State* v. *Somerlot*, 209 W. Va. 125, 128 (2000). In construing the requirements of the Agreement, we are bound by Federal interpretation of the compact. See *Alabama* v. *Bozeman*, 533 U.S. 146, 149 (2001); *Commonwealth* v. *Wilson*, 399 Mass. 455, 462 n.10 (1987).

The defendant contends that he triggered the art. III time limit on January 29, 2004, when he allegedly handed a copy of his motion for a speedy trial to officials at the Warsaw facility, or alternatively, on February 13, 2004, when he filed his motion with the clerk and delivered it to the district attorney's office. The Commonwealth, on the other hand, argues that the 180-day time limitation was triggered only when the county clerk and the district attorney received the prisoner's proper request for a speedy trial, accompanied by the custodian's certificate of inmate status on July 12, 2004. We consider in turn each of the defendant's attempts to invoke the Agreement.

---

[8]Notwithstanding the judge's earlier decision to base her ruling on the defendant's motion to dismiss on the February 13, 2004, date, the judge's decision on reconsideration appears to be based in part on the January 29 date. See note 7, *supra.*

1. *January 29, 2004, motion.* We first consider whether the defendant's alleged handing of his motion for a speedy trial to the prison officials in Virginia on January 29, 2004, if proved, would have been sufficient to trigger the 180-day period.

The United States Supreme Court clarified in *Fex* v. *Michigan,* 507 U.S. 43, 51-52 (1993), that the 180-day time limitation of art. III of the Agreement is commenced not when a prisoner gives the request to the custodian, but instead when the prosecutor and the court in the receiving State actually *receive* the prisoner's request for a final disposition along with the custodian's certificate. This is true even where a warden "through negligence or even malice" delays forwarding the request.[9] *Id.* at 49. Since the Supreme Court's opinion in *Fex* v. *Michigan, supra,* State courts have similarly concluded that a defendant's request for speedy trial does not trigger the 180-day period until and unless it is received by the proper authorities in the receiving State. See, e.g., *State* v. *Burks,* 631 N.W.2d 411, 413 (Minn. Ct. App. 2001); *State* v. *Moe,* 581 N.W.2d 468, 472 (N.D. 1998); *State* v. *Somerlot, supra* at 130-131. The defendant's alleged actions on January 29, 2004, in delivering his motion to his custodian were therefore insufficient to commence the 180-day period.

2. *February 13, 2004, receipt of motion.* Unlike the defendant's January 29 actions, there is no question that his actions on February 13 resulted in actual receipt of the speedy trial motion by the trial court and the prosecutor in the Commonwealth. See *Fex* v. *Michigan, supra.* The issue we must consider then is whether that receipt was sufficient to begin the 180-day period.

---

[9]The defendant asserts that the Commonwealth waived the argument that the 180-day period does not commence until actual receipt of the prisoner's request by the prosecutor and the court. Even if the Commonwealth had waived that issue, it would be of no consequence to the disposition of this case. Our holding with respect to the January 29, 2004, date is equally based on the fact that the pro se motion handed to the Warsaw officials (the same motion later delivered to the Commonwealth on February 13, 2004) was insufficient to begin the 180-day period. See discussion *infra.* In any event, the Commonwealth did argue at the hearing that the 180-day period did not commence on January 29, 2004, because the defendant's pro se motion for a speedy trial did not comply with the requirements of art. III. That argument is sufficient to defeat any claim of waiver. Moreover, that the prosecution did not refer to, or was unaware of, *Fex* v. *Michigan, supra,* does nothing to justify departure from its controlling precedent.

As noted above, the defendant's motion contained his Federal identification number and a request for final disposition of his Essex County indictment. It expressly referenced the Agreement and stated (inaccurately by the time of receipt but accurately at the time he prepared it) that the defendant was being held at the Warsaw facility. However, it was not accompanied by a certificate of inmate status as required by art. III (*a*) and (*b*), and did not otherwise provide the information to be included on the certificate as required by art. III (*a*). If these requirements of art. III are to be construed as mandatory, the defendant's February 13, 2004, request did not comply with the Agreement.

Having examined the Federal and State case law construing the requirements of art. III, as well as the policy rationale underlying those requirements, we are convinced that an inmate who wishes to benefit from art. III's dismissal provisions must, at the very least, ensure that the receiving State has been given *all* of the information expressly listed in art. III (*a*), including a certificate of inmate status.[10]

Looking first at the language of the Agreement, we note that art. III sets forth in absolute terms the prisoner's responsibility to provide the receiving State with the certificate of inmate status (and the information thereon). Article III (*a*) provides that a prisoner's request "*shall* be accompanied by a certificate" of inmate status, and art. III (*b*) commands that the custodial official "*shall* promptly forward it." As employed in the Agreement, the word "shall" has been construed by the Supreme Court as "the language of command." *Alabama* v. *Bozeman, supra* at 153, quoting *Anderson* v. *Yungkau,* 329 U.S. 482, 485 (1947). It is not surprising then, that Federal and State courts, including this court, see *Commonwealth* v. *Martens,* 398 Mass. 674 (1986) (discussed below), have consistently held prisoners

---

[10]As noted above, we do not decide today whether dismissal would be appropriate where a prisoner provides all of the information required by art. III (*a*), and has that information certified by the proper custodial official, but fails to comply with some other technical requirement of the Agreement. Likewise, we do not decide whether a prisoner who otherwise complies with the requirements of art. III, but fails to make use of the proper forms, initiates the 180-day period. As emphasized today, the defendant's pro se motion here lacked much of the information called for in art. III and the information provided was not certified by a custodial official.

accountable for fulfilling art. III's requirements before ordering dismissal.

Although we have not previously considered precisely what information a prisoner must provide to the Commonwealth in order to activate the Agreement's 180-day period, our case law suggests that the requirements imposed on a prisoner by art. III are mandatory, particularly where they concern the information to be provided on the certificate of inmate status. In *Commonwealth* v. *Martens, supra* at 680-681, we held insufficient a prisoner's attempt to invoke the Agreement where, as here, the defendant's motion left "the district attorney without the information in a certificate of status required by art. III (*a*): the amount of time the defendant had served on his sentence; the amount of time remaining to be served; the amount of good time earned; the defendant's parole eligibility; and any parole agency decisions relating to the defendant."[11] We stated that "a prisoner seeking to benefit from the relief provided by the agreement must meet the burden of proving he has complied with the requirements of the agreement." *Id.* at 678. The Appeals Court, in *Commonwealth* v. *Tracy*, 50 Mass. App. Ct. 435, 441 (2000), likewise rejected a defendant's claim that his various letters to the district attorney and the clerk of the Superior Court were sufficient to trigger the 180-day period of art. III: "fail[ure] to comply with the provisions of [art. III] of the Agreement" was fatal to his claims. *Id.*

Several Federal courts have recognized that "invocation of Article III's 180-day time limit generally requires strict compliance with the Article's requirements," particularly that the receiving State be provided with all the information called for in art. III (*a*).[12] *United States* v. *Dent*, 149 F.3d 180, 186-187 (3d Cir. 1998), cert. denied, 525 U.S. 1085 (1999) (defendant's

---

[11]To the extent that our opinion in *Commonwealth* v. *Martens*, 398 Mass. 674, 677 (1986), cert. denied, 481 U.S. 1041 (1987), held that "the 180-day period commences when a defendant files his request with the correctional authorities" and that a prisoner "need only transmit the written notice and request for final disposition to the appropriate custodial officials," that portion of the decision was overruled by the Supreme Court in *Fex* v. *Michigan, supra* at 52. See discussion, *supra*. The remainder of the *Martens* decision is unaffected and continues to be good law.

[12]While the cases cited use the term "strict compliance" to describe what is ordinarily required of a prisoner, many also leave open the possibility that in

letter to District Court insufficient to trigger 180-day period where it "did not include his term of commitment, the time already served, the time remaining to be served on his sentence, or any information concerning good-time credits or parole eligibility as required under [art. III (a)]"). See, e.g., *Norton* v. *Parke*, 892 F.2d 476, 480-481 (6th Cir. 1989), cert. denied, 494 U.S. 1060 (1990) (prisoner's request that "discussed" art. III of Agreement insufficient because prisoner failed to provide certificate of custodial authority or information regarding prison conduct and eligibility for parole); *Casper* v. *Ryan*, 822 F.2d 1283, 1293-1294 (3d Cir. 1987) (letter received by district attorney insufficient as it was unaccompanied by necessary certificate; in addition, letter "[did] not contain substantially all the information which Article III requires must be included"). Contrast *United States* v. *Johnson*, 196 F.3d 1000, 1001, 1004 (9th Cir. 1999) (delivery of prisoner's request for disposition to marshal service constituted delivery to United States Attorney, and public defender's letter to court sufficient notice under Agreement). In accord with this Federal case law, State courts also have widely held prisoners to the standard of strict compliance with the Agreement's requirements.[13] Of particular significance to the case at hand, many courts have rejected inmate attempts at invoking art. III where the speedy trial request was not accompanied by the requisite certificate of inmate status or the information called for thereon.[14] We believe that this case law, whatever else it may require of a prisoner

certain circumstances "substantial" compliance with the requirements of art. III would be sufficient. We discuss below the potential application of the "substantial" compliance doctrine to the facts of this case.

[13]See, e.g., *Johnson* v. *People*, 939 P.2d 817, 820 (Colo. 1997); *Clater* v. *State*, 266 Ga. 511, 512-513 (1996); *Peterson* v. *State*, 139 Idaho 95, 98 (Ct. App. 2003); *State* v. *Greenwood*, 665 N.E.2d 579, 582 (Ind. 1996); *Rushin* v. *Commonwealth*, 931 S.W.2d 456, 459 n.9 (Ky. Ct. App. 1996); *State* v. *Near-hood*, 2 Neb. App. 915, 921-922 (1994); *State* v. *Pero*, 370 N.J. Super. 203, 215 (2004); *State* v. *Moe*, 581 N.W.2d 468, 471-472 (N.D. 1998); *Yiaadey* v. *Commonwealth*, 29 Va. App. 534, 541-543 (1999); *State* v. *Roberson*, 78 Wash. App. 600, 605 (1995); *State* v. *Somerlot*, 209 W. Va. 125, 130 (2000).

[14]See, e.g., *Norton* v. *Parke*, 892 F.2d 476, 481 (6th Cir. 1989), cert. denied, 494 U.S. 1060 (1990); *United States* v. *Espinoza*, 866 F.2d 1067, 1070 (9th Cir. 1988); *Johnson* v. *Stagner*, 781 F.2d 758, 762 (9th Cir. 1986); *Gearheart* v. *Wallace*, 964 F. Supp. 205, 209 (E.D. Va. 1997), aff'd, 145 F.3d 1324 (4th Cir. 1998); *People* v. *Lavin*, 88 Cal. App. 4th 609, 616-617 (2001); *State* v.

wishing to enforce the Agreement's dismissal penalty, requires at the very least that he provide the receiving State with *all* of the information called for in art. III (*a*), and a certificate by the appropriate custodial official.

Our determination that a prisoner supply the necessary information and certification is consistent with the holding of the Supreme Court. See *Fex* v. *Michigan, supra* at 52. While the *Fex* Court did not address what information a prisoner must supply a receiving State in order to initiate the 180-day period, the Court's analysis is instructive in answering that question. In concluding that the "caused to be delivered" language of art. III (*a*) requires actual receipt of a prisoner's request for final disposition by the proper authorities in the receiving State, rather than the mere sending of the request by the prisoner or the custodial authorities, the *Fex* Court strictly construed the delivery requirement of art. III. The Court weighed the implications of construing the phrase more liberally and declined to depart from a rigid interpretation of the language, reasoning that the possibility that "the prosecution will be precluded before the prosecutor even knows [a speedy trial] has been requested" is "significantly worse" than that the prisoner's attempted invocation of the Agreement will fail through no fault of his own. *Id.* at 49-51. The Court rejected the argument that either "fairness" or the Agreement's "higher purpose" justifies deviation from its precise command. *Id.* at 52. See *United States* v. *Collins*, 90 F.3d 1420, 1426 (9th Cir. 1996) ("*Fex* instructs us that the [Agreement] means what it says").

Requiring that prisoners comply with art. III's informational and certificate requirements furthers the over-all purpose of the compact. "The requirements of the agreement, particularly the certificate of status . . . ensure clear official notice that the prisoner is proceeding under the agreement." *Commonwealth* v. *Martens, supra* at 680. Accord *United States* v. *Henson*, 945 F.2d 430, 434 (1st Cir. 1991). As the Supreme Court of North Dakota reasoned, the certificate (and the information it carries)

*Greenwood, supra* at 581-582; *Ellis* v. *Commonwealth*, 828 S.W.2d 360, 360-361 (Ky. 1992); *State* v. *Nearhood, supra* at 921-922; *Windham* v. *State*, 118 Nev. 226, 231-232 (2002); *State* v. *York*, 66 Ohio App. 3d 149, 154 (1990); *State* v. *Johnson*, 278 S.C. 668, 671 (1983); *Eckard* v. *Commonwealth*, 20 Va. App. 619, 627 (1995).

"allows the prosecutor to make a rational decision whether to prosecute and the State may, for example, decline to prosecute upon learning the prisoner is already serving a lengthy sentence elsewhere on a more serious charge." *State* v. *Moe,* 581 N.W.2d 468, 471, 472 (N.D. 1998) (certificate requirement mandatory, not directory). The requirement that a prisoner provide the receiving State with authentication of the designated information by means of a certificate verified by a custodial official assures the receiving State that the information obtained is accurate and current. See *Ward* v. *State,* 435 N.E.2d 578, 580 (Ind. Ct. App. 1982). If the receiving State were left to rely on the prisoner's representation of these facts, it would be forced to corroborate the accuracy of these representations before deciding whether to move forward on the prisoner's case; all the while, the 180-day period would be running. Not only would this shift the burden of obtaining accurate information to the prosecution in a manner inconsistent with the Agreement, it also would significantly delay speedy disposition of these cases. "[P]rosecutors 'cannot be expected to analyze each communication from a prisoner with a fine-tooth comb to determine whether it should be construed as invoking the [agreement].' " *Commonwealth* v. *Martens, supra* at 680, quoting *Nash* v. *Jeffes,* 739 F.2d 878, 884 (3d Cir. 1984), rev'd on other grounds, *Carchman* v. *Nash,* 473 U.S. 716 (1985). See *Norton* v. *Parke, supra* at 481.[15]

Furthermore, fairness compels that a prisoner who wishes to hold the Commonwealth accountable for precise compliance with the 180-day period (on threat of dismissal of charges) must at least uphold certain key aspects of his end of the bargain. After all, the Agreement has two primary goals: "(1) [to] give[] a prisoner the right to demand a trial within 180 days; and (2) [to] give[] a State the right to obtain a prisoner for purposes of trial." *Alabama* v. *Bozeman,* 533 U.S. 146, 151 (2001). Article III creates a three-party balance that is dependent on all parties fulfilling their respective obligations: the prisoner must

---

[15]To the extent that the Agreement contains procedural requirements other than those at issue today (that the prisoner provide the necessary information and certificate), we do not pass on their import in fulfilling the Agreement's purpose.

provide the receiving State, through his custodian, with specific information; the sending State must certify and forward that information and release the prisoner to the receiving State; and the receiving State must bring the prisoner to trial within a certain time frame. Allowing a prisoner to demand of the other parties a level of compliance that he has not achieved skews this balance.[16]

Despite the weight of precedent and the sound policy rationale compelling rigid enforcement against the prisoner of art. III's information gathering and certification provisions, the defendant argues that compliance with these provisions is not required where he has done everything in his power to fulfil his burden under the Agreement. Several jurisdictions have indeed recognized that "substantial" compliance with the provisions of art. III may suffice in certain limited circumstances to trigger the 180-day period.[17] However, even if "substantial" compliance with art. III (whatever that might entail) is sufficient in certain circumstances to start the 180-day period running, those circumstances do not present themselves here. A defendant's motion cannot be said to be substantially compliant where, as here, it is not accompanied by the requisite certificate of inmate status and otherwise lacks much of the critical information required in art. III (*a*). See *United States* v. *Dent, supra* at 186-187; *Norton* v. *Parke, supra* at 481; *Casper* v. *Ryan, supra* at 1293-1294.

Contrary to his contention, the defendant here plainly did not do "all he could" to invoke and pursue his right to a speedy trial. He could have provided accurate and complete information in his February 13, 2004, motion, and he could have checked with the Commonwealth and his new custodian after he filed his motion to ensure that the requisite certificate of

---

[16]The defendant contends that the Agreement is principally aimed at protecting prisoners and it "is to be liberally construed to effectuate [those] purposes." St. 1965, c. 892, § 1, art. IX. Neither the Agreement's purposes nor its liberal construction warrants disregard of its requirements, and neither justifies the court's rejection of the case law requiring compliance with its key provisions. See *State* v. *Pero, supra* at 220 (rejecting similar argument); *State* v. *Moe, supra* at 472 (same).

[17]See *United States* v. *Dent,* 149 F.3d 180, 186-187 (3d Cir. 1998), cert. denied, 525 U.S. 1085 (1999); *Norton* v. *Parke, supra* at 481; *Casper* v. *Ryan,* 822 F.2d 1283, 1293 (3d Cir. 1987), cert. denied, 484 U.S. 1012 (1988).

inmate status was sent.[18,19] See *State* v. *Pero*, 370 N.J. Super. 203, 223 (2004) (prisoner "adequately protected by the opportunity to check on the status of his own request"). Contrast *Gibson* v. *Klevenhagen*, 777 F.2d 1056, 1058 (5th Cir. 1985) (court "hard pressed to conceive of a way in which [defendant], acting pro se, could have effected any better compliance with the [Agreement]," where record "clearly establishe[d] that [defendant] complied with the procedural requirements of the [Agreement]"). The defendant similarly contends that an inmate's request need only contain "sufficient information to alert the government that art. III has been invoked" and that, because he provided the Commonwealth with his Federal identification number, the Commonwealth could "instantly" access all the information required under the Agreement. The Agreement requires more than that the Commonwealth have speedy access to the necessary information; it requires that the inmate, through his custodian, provide that information directly to the Commonwealth in the manner set forth in art. III. The Agreement easily could have required that an inmate provide only enough information to enable the prosecution to gather the rest. It does not do so.[20]

Accordingly, we hold that the 180-day period of the Agreement commences only when a prisoner demonstrates at the very least that he has provided the Commonwealth with *all* the information called for in art. III, including a certificate of inmate status. In particular, the prisoner must provide to his custodian written notice of his place of imprisonment and a proper request

---

[18]Such a check would have been particularly appropriate where, as here, the defendant was transferred to a Federal facility, i.e., to a new custodian, roughly one day after submitting his request to the Virginia authorities at the Warsaw facility.

[19]The judge's conclusion that the defendant "did everything that was required of him (to the best of his ability) under the [Agreement]" is thus not supported by the record.

[20]The defendant appears to argue that he should be excused from complying with the requirements of art. III (*a*) and (*b*) because his custodial officials failed to notify him of his right for a speedy trial, as required by art. III (*c*) of the Agreement. We do not consider this argument because the defendant had actual notice of his right to speedy trial under the Agreement, as evidenced by his reference to the Agreement in his pro se motion for speedy trial.

for a final disposition; and the custodian must forward the request, together with a certificate of inmate status that includes all the information specified in art. III (*a*), to the prosecuting officer and the appropriate court in the Commonwealth. The prisoner must ensure that the Commonwealth has received all of this necessary information. The February 13, 2004, motion for a speedy trial did not meet these requirements and thus did not commence the running of the 180-day period.

3. *July 12, 2004, receipt of forms and certificate.* It was not until July 12, 2004, that the district attorney and the clerk of the Superior Court in Essex County received the defendant's "Place of Imprisonment" form including his request for disposition, accompanied by the "Certificate of Inmate Status" and the "Offer to Deliver Temporary Custody" completed by the warden at FMC Butner. The 180-day period of art. III therefore began to run on July 12, 2004. The period between September 9, 2004, when the defendant was first scheduled for arraignment before the Superior Court, and September 15, 2004, the continuance date, was properly excluded from the 180-day calculation, since the parties jointly requested a continuance for that period. See *Commonwealth* v. *Baker*, 36 Mass. App. Ct. 901, 902 (1994), citing *Commonwealth* v. *Corbin*, 25 Mass. App. Ct. 977, 980 (1988). Additionally, the 180-day period was suspended the day the defendant filed his motion to dismiss, and "[t]he clock [did] not start running again until the rescript on this appeal [was] entered in the trial court." *Commonwealth* v. *Petrozziello*, 22 Mass. App. Ct. 71, 80, cert. denied, 479 U.S. 852 (1986). As only fifty-nine days passed between July 12, 2004, when the 180-day period was commenced, and September 9, 2004, the Commonwealth did not violate the time limit of art. III of the Agreement, and dismissal on that basis was improper.[21]

---

[21]Independent of his claims under the Agreement, the defendant argues that he is entitled to dismissal pursuant to the Sixth Amendment to the United States Constitution and art. 11 of the Massachusetts Declaration of Rights, as well as Mass. R. Crim. P. 36 (d) (3), 378 Mass. 909 (1979). As the defendant presented no evidence in support of these arguments at the hearing before the Superior Court judge, we cannot consider these claims as alternate grounds for dismissal. See *Commonwealth* v. *Garcia*, 409 Mass. 675, 678-679 (1991), and cases cited.

For these reasons, we reversed the orders of the judge dismissing the indictment against the defendant and "reaffirm-[ing]" that dismissal and left the case to stand for further proceedings consistent with the opinion.