COMMONWEALTH vs. WILLIAM MALONE.

No. 04-P-942.

Suffolk. October 18, 2005. - December 9, 2005.

Present: RAPOZA, BROWN, & GRAHAM, JJ.

*Interstate Agreement on Detainers. Constitutional Law,* Speedy trial, Delay in commencement of prosecution. *Due Process of Law,* Delay in commencement of prosecution. *Practice, Criminal,* Speedy trial, Delay in commencement of prosecution.

A Superior Court judge erred in allowing the criminal defendant's motion to dismiss a murder indictment on the ground of prosecutorial delay in violation of the Interstate Agreement on Detainers (Agreement), St. 1965, c. 892, § 1, where the defendant had not complied with the requirement of the Agreement that he provide a certificate of inmate status with his request for final disposition of all charges. [286-287]

This court vacated a Superior Court judge's denial of the criminal defendant's motion to dismiss a murder indictment on the ground that his constitutional right to a speedy trial had been violated by virtue of a delay of nine years in the prosecution of his case, and remanded the matter to the Superior Court for consideration of the prejudice to the defendant arising from the delay. [287-289]

INDICTMENT found and returned in the Superior Court Department on August 15, 2002.

A motion to dismiss was heard by *Charles T. Spurlock,* J.

*Joseph M. Ditkoff,* Assistant District Attorney (*Timothy J. Bradl,* Assistant District Attorney, with him) for the Commonwealth.

*Matthew H. Feinberg* (*Matthew A. Kamholtz* with him) for the defendant.

BROWN, J. This is the Commonwealth's appeal from the allowance, in part, of the defendant's motion to dismiss a murder indictment on grounds of prosecutorial delay in violation of the Interstate Agreement on Detainers (Agreement), St. 1965, c. 892, § 1. The crime occurred in 1980, at which time a complaint

for murder was issued against the defendant from District Court. The defendant could not be found until 1993, when authorities located him in a Texas prison. On or about August 18, 1993, the defendant sent the Boston police department and the District and Superior Courts a letter, referencing the Agreement, stating where he was incarcerated and requesting final disposition of all complaints or indictments and a speedy trial. On or about August 26, 1993, a detainer was sent to the appropriate jail in Texas. Despite the detainer, the defendant was released on parole in December, 1997.

In January, 2002, authorities again located the defendant in a Texas prison and at that time lodged a detainer. In March, 2002, the Texas authorities, pursuant to the Agreement, sent to the Boston police department the defendant's request for disposition of complaints or indictments, a certificate of inmate status, and an offer to deliver temporary custody of the defendant. In July, 2002, the defendant was returned from Texas and arraigned in District Court. In August, 2002, an indictment was obtained. The defendant moved for dismissal and, after a hearing, a Superior Court judge ruled that because the defendant had "substantially" complied with the Agreement in August, 1993, and the Commonwealth failed to bring the defendant to trial within the 180-day time limit set forth in the Agreement, dismissal was required. The motion judge denied the defendant's additional claim that he had been deprived of his constitutional right to a speedy trial.

1. *Interstate Agreement on Detainers.* The issue presented requires us to examine art. III of the Agreement. A brief summary of art. III's provisions is set forth in *Commonwealth* v. *Copson*, 444 Mass. 609 (2005), a case which, we think, controls this issue in material respects:

> "Article III 'gives a prisoner incarcerated in one State (sending State) the right to request the speedy disposition of any untried charges on the basis of which a detainer has been lodged against the prisoner by another State (receiving State).' Article III establishes the precise procedures by which the prisoner must make his request and sets forth the manner in which the request is to be conveyed to the receiving State. Essentially, in order to initiate the art. III

procedures, the prisoner is to give or send the appropriate 'notice' and 'request' to the warden or other custodial official in the sending State. In turn, the custodial officer is responsible for forwarding the prisoner's written notice and request to the appropriate prosecuting official and court in the receiving State, together with a 'certificate' of inmate status that includes certain information set forth in art. III (*a*). See art. III (*a*) and (*b*). 'If the prisoner is not tried on the outstanding charges within 180 days after he has caused the appropriate authorities to be notified of his request for final disposition in accordance with the agreement, the charges are to be dismissed' with prejudice. See Art. V (*c*). To facilitate the implementation of the Agreement, and to create uniformity and consistency in carrying out its provisions, States have developed a set of standardized forms for each step in the procedure." (Citations and footnotes omitted.)

*Id.* at 611-613.[1]

In *Copson*, the court, relying in large part on *Fex* v. *Michigan*, 507 U.S. 43, 51-52 (1993), made clear that "an inmate who wishes to benefit from art. III's dismissal provisions must, at the very least, ensure that the receiving State has been given *all* of the information expressly listed in art. III (a), including a certificate of inmate status" (footnote omitted). *Commonwealth* v. *Copson, supra* at 618. The court in *Copson* also emphasized that the 180-day time limitation does not begin to run until "the prosecutor and the court in the receiving State actually *receive*" the required information. *Id.* at 617. Here, there is no dispute that a certificate of inmate status did not accompany the defendant's August, 1993, request for final disposition of all charges, and therefore the defendant's claim fails. See *id.* at 623. In short, the motion judge's conclusion to the contrary cannot be sustained given the mandatory language in *Copson*.[2]

2. *Speedy trial.* The denial of the defendant's constitutional

---

[1]The motion judge did not have the benefit of the reasoning in *Copson*, an opinion released in July, 2005, in which the Supreme Judicial Court rejected the approach of substantial compliance. See *id.* at 623-624.

[2]To the extent that the defendant claims that Texas prison officials failed to forward the information he had requested, even if true, such action would not entitle him to the application of the art. III dismissal provisions. An inmate may have other remedies for the negligent conduct of prison officials.

right to a speedy trial is a far more viable claim from the defendant's perspective. The motion judge, referring to the defendant's claim that he had been denied his right to a speedy trial, applied the analysis used to evaluate preindictment delay and concluded that the defendant had not been unfairly prejudiced.[3] See, e.g., *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 86-87 (1989) (for the drastic remedy of dismissal of an indictment, intentional or reckless delay by the government resulting in severe prejudice to the defendant must be shown). This case does not, however, involve a preindictment delay and the principles used by the motion judge to analyze the claim are not applicable here. See *Commonwealth* v. *McColgan*, 31 Mass. App. Ct. 932, 933 (1991) (due process protections apply to preindictment delay).

Here, once the defendant was subject to the 1980 complaint, his right to a speedy trial under the Sixth Amendment to the United States Constitution, as well as art. 11 of the Massachusetts Declaration of Rights, attached. See *Burton* v. *Commonwealth*, 432 Mass. 1008, 1008-1009 (2000); *Commonwealth* v. *Underwood*, 3 Mass. App. Ct. 522, 526-527 (1975). A Sixth Amendment claim, as opposed to a claim of preindictment delay, is evaluated in accordance with the familiar four-factor balancing test identified in *Barker* v. *Wingo*, 407 U.S. 514, 530 (1972). These factors include the following: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Ibid.*[4]

Because the delay at issue here spans nine years and the defendant made at least some attempts to assert his right to a trial, the most significant factor the motion judge must consider is the prejudice to the defendant. "Prejudice is necessarily inherent in any long delay." *Commonwealth* v. *Green*, 353 Mass. 687, 690 (1968). See *Commonwealth* v. *Lutoff*, 14 Mass. App. Ct. 434, 443 n.9 (1982). In *Doggett* v. *United States*, 505 U.S.

---

[3]The defendant appealed from the denial of that portion of the motion that alleged a speedy trial violation. The Commonwealth argues that the defendant is not entitled to cross-appeal. In the interest of judicial economy and efficiency, we think the issue should be addressed.

[4]As the Commonwealth appropriately suggests, we should not, in the first instance, engage in the balancing test set forth in *Barker*, without the motion judge having first made findings of fact.

647, 655 (1992), the Supreme Court held that, regardless of its cause, "excessive delay [between indictment and prosecution] presumptively compromises the reliability of a trial."[5]

The Supreme Court thus gave life to the theory of presumptive prejudice in cases such as this one, where the delay is many years longer than that generally sufficient to trigger judicial review. See *ibid.* In sum, "when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief" (citation and footnotes omitted). *Id.* at 658.

The defendant also claims that he is entitled to relief under Mass.R.Crim.P. 36(d)(3), 378 Mass. 913 (1979).[6] However, the defendant did not raise rule 36(d)(3) below; thus, the motion judge did not have occasion to develop the record regarding that issue. See note 4, *supra*.

Here, as the Commonwealth knew where to find the defendant for a period of at least four years, if not nine years, it was obligated to bring him to trial on the pending murder charge. Absent an affirmative showing by the Commonwealth that the delay was harmless beyond a reasonable doubt, the motion judge could find that the defendant was denied his constitutional right to a speedy trial. See and compare *Commonwealth* v. *Green, supra* at 689-690; *Commonwealth* v. *Beckett*, 373 Mass. 329, 334 (1977).

So much of the order as allowed the defendant's motion to dismiss based on violation of the agreement is reversed. So much of the order as denied the defendant's motion to dismiss based on violation of the defendant's constitutional rights is vacated. The matter is remanded to the Superior Court for such further findings as are necessary to evaluate the defendant's claims with respect to violation of his constitutional right to a

[5]In discussing the reason for the delay and the length of the delay, the Court in *Doggett* said that "our toleration of such negligence varies inversely with its protractedness." *Id.* at 657.

[6]See in this regard *Commonwealth* v. *Whooley*, 419 Mass. 421, 423 n.4 (1995).

speedy trial, as well as violation of rule 36(d)(3), consistent with this opinion.

*So ordered.*