Following a jury trial in the Superior Court, the defendant, David R. Thompson, was convicted of two counts of armed robbery and one count of malicious destruction of property. In his direct appeal, he argued that his case should have been dismissed in light of the time requirement of art. III of the Interstate Agreement on Detainers (IAD), which mandates a trial within 180 days of receipt of an IAD request absent good cause for a delay. Concluding that there was good cause, we affirmed. See Commonwealth v. Thompson, 80 Mass. App. Ct. 1117 (2011). Thereafter, the defendant filed a motion for a new trial, claiming that trial counsel was constitutionally ineffective in relying principally on the IAD timeline. A Superior Court judge denied the motion in a thorough, well-reasoned opinion. We affirm.
Background. We summarize the evidence that the Commonwealth presented at trial as follows. In July, 2005, the defendant, armed with a crowbar, forced his way into a CVS Pharmacy in Georgetown in search of prescription pain mediation, and smashed the surveillance cameras, cash registers, and other property. The items that he stole included various pharmaceuticals, syringes, and cash (including rolled coins). During the robbery, he assaulted one CVS employee with a crowbar, stood on him, and threw him on the floor. The defendant also pushed another CVS employee (a manager) to force his way into the store, pulled her arm, and threatened her when she told him she could not access the prescription pain medication he sought. He forced both employees to move a safe that held controlled substances into his white Buick Rendezvous truck. Before driving away, the defendant threw the manager against the building, injuring her. The robbery was captured by surveillance video. Responding police officers found a sweatshirt along the main road; it matched the robber's clothing.[2] Subsequent deoxyribonucleic acid (DNA) testing of a sample from the sweatshirt determined that the DNA mixture included the defendant's DNA as a major profile.
The day after the robbery, the defendant was arrested on unrelated charges in Maine. He was driving a white Buick Rendezvous. Georgetown police officers traveled to Maine, where they seized and searched the vehicle. In it, they found rolled coins, syringes, black leather gloves similar to those worn by the robber, and a wallet that contained the defendant's license.
Following the defendant's transfer from Maine to Massachusetts pending trial, the defendant wrote letters to a third party and placed calls from prison in which the defendant expressly implicated himself in the robbery by relating details of the crime including his attire, and his plot to "beat" the surveillance video and DNA evidence.
The defense strategy, which the defendant himself suggested to trial counsel, centered principally on exploiting the IAD time requirement. In particular, on June 16, 2008, the defendant (who was a prisoner in Maine at the time) mailed an IAD request to the District Court. This triggered the start of the 180-day IAD timeline on June 23, which (absent good cause shown) expired on December 22, 2008. At the arraignment, trial counsel pressed for an immediate trial. The Commonwealth sought an extension of time to conduct the aforementioned DNA testing, which was granted. Thereafter, the Commonwealth sought additional extensions of time related to the DNA testing. Trial counsel opposed all continuances, pressing for trial each time. The Commonwealth's request for extensions were allowed.
Prior to trial, trial counsel moved to dismiss in view of the 180-day limit under the IAD. The motion was denied.
During the bench trial that followed, trial counsel waived an opening statement. He cross-examined each of the Commonwealth's witnesses, including the CVS employees from whom he elicited testimony that called into question the ability of these witnesses to identify the defendant as the assailant. Trial counsel successfully excluded the in-court identification of the defendant by the CVS manager on the basis that she had not performed an out-of-court identification and her in-court identification was too suggestive. He also successfully objected to the trial judge conducting a voir dire of a witness who asserted his Fifth Amendment to the United States Constitution privilege. Trial counsel cross-examined the witness who recovered the defendant's car in Maine, eliciting testimony that the witness found neither the CVS safe nor the crowbar in the car and that he failed to conduct any fingerprint analysis of the items he did find. Trial counsel sought to exclude the jail calls and the defendant's written letters and when his efforts were unsuccessful, he cross-examined the witness who recovered the letters, establishing that the letters were unsigned and the search warrant for the letters was incorrectly dated. Because the defendant directed him not to do so, trial counsel did not do a closing argument. As discussed supra, the defendant's convictions were affirmed on direct appeal, his motion for a new trial was denied, and this appeal followed.
Discussion. We review the denial of a motion for a new trial claiming ineffective assistance of counsel by applying the familiar two-part test to determine: (1) whether the defendant has demonstrated "serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and (2) whether counsel's poor performance "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Where, as here, the defendant challenges the tactical judgment of counsel, we require a showing that the judgment is "manifestly unreasonable." Commonwealth v. Hurley, 455 Mass. 53, 70 (2009), quoting Commonwealth v. Gonzalez, 443 Mass. 799, 809 (2005).
IAD strategy. The defendant first suggests that trial counsel's execution of the IAD strategy was manifestly unreasonable because, although he opposed the Commonwealth's continuance requests and stood ready for trial at all times, he waived the IAD timeline by failing to "flag" it, which (according to the defendant) the Supreme Judicial Court's decision in Commonwealth v. Copson, 444 Mass. 609 (2005), required him to do. The court in Copson did not hold that an inmate waives the 180-day time limit if he fails to flag it; instead, the case concerned the inmate's obligation to ensure the receipt of all the information listed in art. III(a) of the IAD, including a certificate of the inmate's status, in order to trigger the start of the IAD timeline.[3] See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 618. While we do not condone trial counsel's failure to disclose, even if the defendant had alerted the trial judge of the IAD timeline, there was good cause for the continuances requested by the Commonwealth.[4] See Thompson, 80 Mass. App. Ct. at 1117. Thus, the defendant suffered no prejudice from counsel's failure to flag the issue expressly.
Perhaps recognizing this, the defendant next contends that the IAD strategy itself "had no chance of success" and thus was manifestly unreasonable. However, the strategy might have succeeded had the Commonwealth sought continuances for which good cause was lacking.[5] See, e.g., United States v. Mauro, 436 U.S. 340, 364-365 (1978) (affirming dismissal for violation of IAD time limit where defendant persistently requested speedy trial, even though he did not expressly invoke IAD provisions). Moreover, given the overwhelming evidence of the defendant's guilt, see discussion supra, focusing on the IAD timeline -- a strategy that the defendant insisted on pursuing -- was not unreasonable.
Importantly, once the defendant's motion to dismiss on the basis of the IAD timeline was denied, trial counsel was substantially engaged in defending his client. For example, he filed motions in limine, effectively excluded identification evidence on the basis of the suggestiveness of the in-court identification, cross-examined the Commonwealth's witnesses, successfully requested that another judge address a Fifth Amendment issue with one of the witnesses to avoid tainting the trial judge, and raised questions about witnesses' ability to identify the defendant and the police identification procedures.
The defendant criticizes trial counsel for failing to file pretrial motions or to retain a DNA expert. Doing so, however, would have delayed the time to trial and worked against the strategic choice to pursue the IAD strategy. See Commonwealth v. Rondeau, 378 Mass. 408, 413 (1979) ; Commonwealth v. Bernier, 359 Mass. 13, 19 (1971). Further, the defendant fails to indicate what opinion a DNA expert would have given to counter the Commonwealth's evidence, which pretrial motions should have been filed, or how such strategies would have led to a different result.[6] See Commonwealth v. Amirault, 424 Mass. 618, 652 (1997) ; Commonwealth v. Schlieff, 5 Mass. App. Ct. 665, 668 (1977).
The defendant additionally contends that trial counsel should have negotiated a plea deal. However, the defendant does not show that the Commonwealth would have been interested in a plea or that any such plea would have resulted in a better sentence for the defendant.[7] See Commonwealth v. Marihno, 464 Mass. 115, 129-130 (2013).
Trial counsel's statements. However, we agree with the defendant that two of trial counsel's statements to the judge, made during a side bar before the close of the evidence, meet his burden under prong one of Saferian. Specifically, after the defendant's jail calls and letters were admitted in evidence, trial counsel stated, "I don't know if you want to speed this up, I mean once Your Honor reads the letters and listens to the trial, I mean there's no defense." Continuing, trial counsel stated, "I assume we'll just get right into sentencing. I'm not trying to ...." These statements, suggesting as they did, a concession of the defendant's guilt, demonstrate "serious incompetency," constituting "behavior falling measurably below that which might be expected from an ordinary fallible lawyer." Saferian, 366 Mass. at 96.
We turn then to prong two of the Saferian test to determine whether these statements prejudiced the defendant. We conclude that they did not. Specifically, this was a bench trial. We assume that the judge is familiar with the law and did not permit himself to be influenced by these statements. See Commonwealth v. Collado, 426 Mass. 675, 678-679 (1998). Indeed, the judge admonished trial counsel immediately following the statements, stating that he was taking his role as fact finder seriously and noting that he had not yet heard all of the evidence, including the recordings of the jailhouse calls. Furthermore, the evidence of the defendant's guilt was overwhelming. As set forth supra, it included eyewitness statements and identification of the defendant as the assailant, the defendant's major profile matching the DNA on the sweatshirt worn by the assailant, the recovery of items taken from the CVS from the defendant's car, the surveillance video of the robbery, and the defendant's jailhouse admissions. On this record, the defendant has not met his burden under prong two of the Saferian test. See Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977).
Order denying motion for new trial affirmed.

A gas station attendant saw someone wearing the sweatshirt moments before the robbery; the person, who resembled the defendant, was getting gasoline for a white Buick Rendezvous a short distance from the CVS.

The defendant's reliance on Reed v. Farley, 512 U.S. 339 (1994), fares no better. Reed concerns the availability of habeas corpus relief under 28 U.S.C. § 2254 for a defendant who never objected to the trial date and suffered no prejudice therefrom. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 352. Nor can the defendant rightly fault trial counsel for not being aware of the decision in United States v. Dowdell, 595 F.3d 50, 64-65 (1st Cir. 2010) (explaining that defendant, who requested multiple continuances, waived his right to enforce IAD timeline where he first raised issue on appeal), which did not issue until after the trial in this matter.

These continuances were principally related to the need to obtain a buccal swab from the defendant and complete DNA testing.

Counsel controlled as much of the timeline as he could by not seeking any delays himself and reporting that he was ready for trial at all times.

Indeed, even without the DNA evidence, the evidence of the defendant's identity was substantial.

The defendant also notes that trial counsel waived opening statements and closing arguments. The waiver of an opening statement, especially given that this was a bench trial, does not meet the defendant's burden on prong one of Saferian. See Commonwealth v. Cohen, 412 Mass. 375, 391 (1992). The defendant requested that trial counsel not provide any closing argument.